## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| WHITE STALLION ENERGY, LLC, *et al.*,[1] | ) | Case No. 20-13037 (LSS) |
| | ) | |
| | ) | (Joint Administration Requested) |
| Debtors. | ) | |
| | ) | |

### DEBTORS' MOTION SEEKING ENTRY OF
### INTERIM AND FINAL ORDERS (I) AUTHORIZING THE
### DEBTORS TO (A) PAY THEIR OBLIGATIONS UNDER INSURANCE POLICIES
### ENTERED INTO PREPETITION AND (B) RENEW, SUPPLEMENT, MODIFY, OR
### PURCHASE INSURANCE COVERAGE AND (II) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state as follows in support of this motion:[2]

### Relief Requested

1.     The Debtors seek entry of interim and final orders, substantially in the forms

attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and "Final Order"):

(a) authorizing the Debtors to (i) continue honoring their obligations under prepetition Insurance

Policies (as defined below) and satisfy payment of prepetition obligations related thereto, including

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  White Stallion Energy, LLC (2360); Alchemy Fuels, LLC (N/A); Carbo*Prill, LLC (8385); Chili Pepper Mines, LLC (2247); Friendsville Mine LLC (8489); Liberty Mine, LLC (3730); Red Brush West, LLC (3940); Solar Sources Mining, LLC (3628); Trust Resources, LLC (1983); Vigo Coal Land, LLC (9585); Vigo Coal Operating Co., LLC (7462); Vigo Coal Sales, LLC (1325); Vigo Cypress Mine LLC (9409); Vigo Equipment, LLC (5629); Vigo Sunna, LLC (7468); White Stallion – Eagle River, LLC (6743); White Stallion – Solar, LLC (9457); White Stallion Acquisition, LLC (2298); and White Stallion Holdings, LLC (3645). The location of the Debtors' headquarters is:  250 N. Cross Pointe Blvd., Evansville, Indiana 47715.

[2]     A detailed description of the Debtors and their business, and the facts and circumstances supporting the Debtors' chapter 11 cases, are set forth in greater detail in the *Declaration of David J. Beckman, Chief Operating Officer of White Stallion Energy, LLC, in Support of Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously with the Debtors' voluntary petitions for relief filed under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on December 2, 2020 (the "Petition Date"). Capitalized terms used but not otherwise defined in this motion shall have the meanings ascribed to them in the First Day Declaration.

the payment of related brokerage fees, and (ii) renew, supplement, modify, extend, or purchase insurance coverage in the ordinary course of business on a postpetition basis; and (b) granting related relief.  In addition, the Debtors request that the Court schedule a final hearing within approximately 30 days of the commencement of these chapter 11 cases (the "Interim Period") to consider approval of this on a final basis.

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105(a), 363(b), and 364 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Local Rule 9013-1(m).

## Insurance Policies

5.      The Debtors maintain approximately 13 insurance policies (collectively, the "Insurance Policies") administered by multiple third-party insurance carriers (collectively, the "Insurance Carriers").  The Insurance Policies provide coverage for, among other things, property, equipment, automobiles, general liability, excess liability, umbrella liability, pollution

27416375.1

liability, and directors' and officers' liability.[3]  The aggregate annual premium for the Insurance Policies is approximately $2.3 million.

6.      The Insurance Policies are generally one year in length and renew at different times throughout the year.  The Debtors are in the process of renewing nine of the Insurance Policies. The Debtors seek authority to pay all prepetition amounts due and owing (if any) on account of the insurance premiums and to continue honoring all payment obligations under the Insurance Policies in the ordinary course of business to ensure uninterrupted coverage thereunder.

7.      The Debtors have financed, or are in the process of financing, eight of the Insurance Policies with Westfield Bank, FSB ("Westfield Bank").  More specifically, the Debtors financed the premiums associated with four of the directors' and officers' liability Insurance Policies through a premium-financing agreement (the "D&O PFA").  Under the D&O PFA, Westfield Bank agreed to pay the insurance premiums for the financed Insurance Policies in exchange for nine monthly premium payments of approximately $27,000 each due on the first day of each month and an up-front payment of approximately $82,000.  The Debtors have made the up-front payment, as well as four monthly payments.  As of the Petition Date, the December 1, 2020, payment of $27,000 is outstanding, which the Debtors seek to pay in the Interim Period.

8.      The Debtors' obligations under the D&O PFA are secured by all sums due under the D&O PFA and any unearned premiums or other sums that may become payable under the financed Insurance Policies, which policies are essential to the preservation of the Debtors' business.

---

[3]     In addition to the Insurance Policies listed in Exhibit C to this motion, the Debtors maintain an insurance policy with respect to workers' compensation.  The Debtors' workers' compensation program is described, and relief is requested with respect to such program, in the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Pay Prepetition ages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs, and (II) Granting Related Relief*, filed contemporaneously herewith.

9.      The Debtors are in the final stages of financing the premiums associated with four Insurance Policies, including the property, equipment, and two of the excess liability Insurance Policies (the "Property & Equipment PFA," and together with the D&O PFA, the "Premium Financing Agreements"), on substantially similar terms as the D&O PFA.  The Debtors expect that under the terms of the Property & Equipment PFA, Westfield Bank will agree to pay the insurance premiums for the financed Insurance Policies in exchange for nine monthly premium payments of approximately $95,000 each due on the first day of each month and an up-front payment of approximately $347,000.  The Debtors' obligations under the Property & Equipment PFA will be secured by all sums due under thereunder and any unearned premiums or other sums that may become payable under the financed Insurance Policies, which policies is essential to the preservation of the Debtors' business.  As of the Petition Date, there are no prepetition amounts outstanding under the Property & Equipment PFA; however, the up-front payment will come due in the Interim Period.

10.     The remaining five Insurance Policies are not financed pursuant to a premium finance agreement.  These Insurance Policies include a directors' and officers' liability tail policy, general liability policy, pollution liability policy, umbrella liability policy, and automobile policy.  The directors' and officers' liability tail policy requires a single upfront payment of $400,000, which will come due in the Interim Period.  The remaining four Insurance Policies are self-financed through the Insurance Carriers.  Under the terms of these policies, the Debtors make an upfront payment followed by eight or nine equal monthly installment payments, depending on the specific Insurance Policy.  The aggregate upfront payment of approximately $90,000 will come due in the Interim Period.  The aggregate monthly payments will total approximately $34,000 a month.

11.     Maintaining the Debtors' insurance program, including the use of the Premium Financing Agreements, is essential to the preservation of the value of the Debtors' business, operations, and assets.  Moreover, in many instances, coverage provided by the Insurance Policies is required by the regulations, laws, and contracts governing the Debtors' commercial activities, including the requirements of the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") that a debtor maintain adequate coverage given the circumstances of its chapter 11 case.  Accordingly, the Debtors request authority to maintain their existing Insurance Policies and Premium Financing Agreements to the extent appropriate with respect to the Debtors' operations, to pay prepetition obligations related thereto, to extend or reduce those Insurance Policies, to enter into new insurance policies, and to enter into new Premium Financing Agreements, as applicable, in the ordinary course of business.

### Brokerage Fees

12.     In connection with the Insurance Policies, the Debtors obtain insurance brokerage services from MJ Insurance, Inc. ("MJ") and CAC Specialty (together with MJ, the "Brokers"). The Insurance Brokers, among other things, (a) assist the Debtors in obtaining comprehensive insurance coverage for the Debtors' operations in a cost-effective manner, (b) remit the payments on the company's behalf to the Insurance Carriers, (c) manage renewal data, (d) market the Insurance Policies, (e) provide all interactions with carriers including negotiating policy terms, provisions, and premiums, and (f) provide ongoing support throughout the applicable policy periods.  In connection with these services, the Brokers earn commissions as the Debtors pay their periodic premiums to the Insurance Carriers (the "Brokerage Fees").  As of the Petition Date, the Debtors do not believe that they owe any prepetition amounts on account of the Brokerage Fees.

13.     The Debtors believe that continuation of the services of the Brokers is necessary to ensure that the Debtors' ability to secure Insurance Policies on advantageous terms at competitive

27416375.1

rates, facilitate the proper maintenance of the Insurance Policies postpetition, and ensure adequate protection of the Debtors' property for any party in interest. Continued retention of the Brokers is particularly important here given that the Debtors are currently in the process of renewing nine Insurance Policies. Accordingly, the Debtors request authority to continue paying the Brokerage Fees in the ordinary course of business.

### Basis for Relief

I.  **Continuation of the Insurance Policies Is Required by the Bankruptcy Code and U.S. Trustee Operating Guidelines.**

14.    Section 1112(b)(4)(C) of the Bankruptcy Code lists "failure to maintain appropriate insurance that poses a risk to the estate or to the public" as "cause" for mandatory conversion or dismissal of a chapter 11 case. In addition, in many instances, the coverage provided under the Insurance Policies is required by the regulations, laws, and contracts that govern the Debtors' commercial activities, including the operating guidelines issued by the U.S. Trustee (the "U.S. Trustee Operating Guidelines"). Given this backdrop, the Debtors believe it is essential to their estates, and consistent with the Bankruptcy Code and the U.S. Trustee Operating Guidelines, that they maintain and continue to make all payments required under their Insurance Policies, and have the authority to supplement, amend, extend, renew, or replace their Insurance Policies as needed, in their judgment, without further order of the Court.

II.  **Paying Obligations under the Insurance Policies, the Premium Financing Agreements, and Maintaining Insurance Coverage in the Ordinary Course Is Warranted.**

15.    Section 363(b)(1) of the Bankruptcy Code provides that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." Under section 363(b), courts in this jurisdiction require only that the debtor "show that a sound business purpose justifies" the proposed use of property. *See, e.g.*, *In re Montgomery Ward*

*Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *see also, e.g.*, *In re Phx. Steel Corp.*,

82 B.R. 334, 335–36 (Bankr. D. Del. 1987) (requiring a "good business reason" for use under

section 363(b) of the Bankruptcy Code). Moreover, "[w]here the debtor articulates a reasonable

basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts

will generally not entertain objections to the debtor's conduct." *In re Johns- Manville Corp.*,

60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238

(3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a

near-Herculean task.").

16.     Thus, if a debtor's actions satisfy the business judgment rule, then the transaction

in question should be approved under section 363(b) of the Bankruptcy Code. Indeed, when

applying the "business judgment" standard, courts show great deference to a debtor's business

decisions. *See In re Montgomery Ward Holding Corp.*, 242 B.R. at 656 ("Courts are loath to

interfere with corporate decisions absent a showing of bad faith, self-interest, or gross

negligence."); *In re First Wellington Canyon Assocs.*, No. 89-593, 1989 WL 106838, at *3

(N.D. Ill. Sept. 8, 1989) ("The debtor's business judgment . . . must be accorded deference unless

shown that the bankrupt's decision was taken in bad faith or in gross abuse of the bankrupt's

retained discretion.").

17.     Section 105(a) of the Bankruptcy Code further provides that a court "may issue any

order, process, or judgment that is necessary or appropriate to carry out the provisions of" the

Bankruptcy Code pursuant to the "doctrine of necessity." The "doctrine of necessity" functions in

a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power

to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code

and further supports the relief requested herein. *See In re Lehigh & New Eng. Ry. Co.*, 657 F.2d

570, 581 (3d Cir. 1981) (holding that a court may authorize payment of prepetition claims if essential to the debtor's continued operation); *see also In re Just for Feet, Inc*., 242 B.R. 821, 824–25 (D. Del. 1999) (holding that section 105(a) of the Bankruptcy Code "provides a statutory basis for payment of prepetition claims" under the doctrine of necessity); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (explaining that the doctrine of necessity is the standard in the Third Circuit for enabling a court to authorize the payment of prepetition claims prior to confirmation of a chapter 11 plan).

18.　　Paying obligations under the Insurance Policies, the Brokerage Fees, and the Premium Financing Agreements is warranted under section 363(b) and the doctrine of necessity. As described above, maintaining the Insurance Policies is necessary to minimize risk exposure and preserve the value of the Debtors' assets, thereby ensuring the adequate protection of the Debtors' property for any party in interest.　Failing to maintain the Insurance Policies would have a material adverse effect on the ability of the Debtors to maximize the value of their estates.　In the Debtors' business judgment, the terms of the Premium Financing Agreements represent the best possible terms for financing the premiums of the financed Insurance Policies, and the Debtors' estates will benefit by maintaining, and entering into, the low-cost financing.

19.　　Courts in this district have granted relief similar to the relief requested herein under sections 105(a) and 363(b) of the Bankruptcy Code.　*See, e.g.*, *In re 24 Hour Fitness Worldwide, Inc.*, No. 20-11558 (KBO) (Bankr. D. Del. Jul. 13, 2020) (authorizing debtors to pay prepetition premiums and enter into new insurance policies pursuant to sections 105(a) and 363(b) of the Bankruptcy Code); *In re Longview Power, LLC*, No. 20-10951 (BLS) (Bankr. D. Del. May 18, 2020) (same); *In re Blackhawk Mining LLC*, No. 19-11595 (LSS) (Bankr. D. Del. Aug. 9, 2019)

(same); *In re Imerys Talc Am., Inc.*, No. 19-10289 (LSS) (Bankr. D. Del. Mar. 26, 2019) (same); *In re Things Remembered, Inc.*, No. 19-10234 (KG) (Bankr. D. Del. Feb. 26, 2019).[4]

### **Processing of Checks and Electronic Fund Transfers Should Be Authorized**

20.    The Debtors have sufficient funds to pay the amounts described in this motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations, the proposed debtor-in-possession financing, and anticipated access to cash collateral.  Under the Debtors' existing cash management system, the Debtors have made arrangements to readily identify checks or wire transfer requests relating to the Insurance Policies, Brokerage Fees, and Premium Financing Agreements, as applicable.  Accordingly, the Debtors believe that checks or wire transfer requests that are not related to authorized payments will not be honored inadvertently. Therefore, the Debtors respectfully request that the Court authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this motion.

### **The Requirements of Bankruptcy Rule 6003 Are Satisfied**

21.    Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." For the reasons discussed above, authorizing the Debtors to maintain their Insurance Policies is integral to the Debtors' ability to transition their operations into these chapter 11 cases smoothly. Failure to receive such authorization and other relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture.  For the reasons discussed herein, the relief requested is necessary for the Debtors to maintain the going-concern

---

[4]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request of the Debtors' proposed counsel.

value of their business for the benefit of all stakeholders.  Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

### Reservation of Rights

22.    Nothing contained in this motion or any actions taken by the Debtors pursuant to relief granted in the Interim Order and Final Order is intended or should be construed as:  (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or any other party in interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this motion are valid and the Debtors and all other parties in interest expressly reserve their rights to contest the extent, validity, or perfection, or to seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

23.    To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and

that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### <u>Notice</u>

24.    The Debtors will provide notice of this motion to:  (a) the Office of the United States Trustee for the District of Delaware; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the Prepetition ABL Agent; (d) counsel to the Prepetition Term Loan Agent and DIP Agent; and (e) the Cash Management Banks.  Notice of this motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m).  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.


[*Remainder of Page Intentionally Left Blank*]

WHEREFORE, the Debtors respectfully request entry of the Interim and Final Orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively, (a) granting the relief requested herein, and (b) granting such other relief as is just and proper.

Dated:  December 3, 2020
      Wilmington, Delaware

/s/ *S. Alexander Faris*

M. Blake Cleary (No. 3614)
Jaime Luton Chapman (No. 4936)
S. Alexander Faris (No. 6278)
**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253

- and -

Chris L. Dickerson (*pro hac vice* admission pending)
Nathan S. Gimpel (*pro hac vice* admission pending)
Mike Jones (*pro hac vice* admission pending)
Matthew Smart (*pro hac vice* admission pending)
**PAUL HASTINGS LLP**
71 South Wacker Drive, Suite 4500
Chicago, Illinois 60606
Telephone:  (312) 499-6000
Facsimile:  (312) 499-6100

Todd M. Schwartz (*pro hac vice* admission pending)
**PAUL HASTINGS LLP**
1117 South California Avenue
Palo Alto, California 94304
Telephone:  (650) 320-1800
Facsimile:  (650) 320-1900

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**<u>EXHIBIT A</u>**

**Proposed Interim Order**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

|                                          |     |                          |
|------------------------------------------|-----|--------------------------|
| In re:                                   | )   | Chapter 11               |
|                                          | )   |                          |
| WHITE STALLION ENERGY, LLC, *et al.*,[1] | )   | Case No. 20-13037 (LSS)  |
|                                          | )   |                          |
|                                          | )   | (Jointly Administered)   |
| Debtors.                                 | )   |                          |
|                                          | )   | **Re: Docket No. _**     |

### INTERIM ORDER (I) AUTHORIZING THE DEBTORS
### TO (A) PAY THEIR OBLIGATIONS UNDER INSURANCE POLICIES
### ENTERED INTO PREPETITION AND (B) RENEW, SUPPLEMENT, MODIFY,
### OR PURCHASE INSURANCE COVERAGE AND (II) GRANTING RELATED RELIEF

Upon the motion (the "<u>Motion</u>")[2] of the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") for entry of an interim order (this "<u>Interim Order</u>"):  (a) authorizing, but not directing, the Debtors to (i) pay their obligations under the insurance policies entered into prepetition and (ii) renew, supplement, modify, or purchase insurance coverage in the ordinary course; and (b) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  White Stallion Energy, LLC (2360); Alchemy Fuels, LLC (N/A); Carbo*Prill, LLC (8385); Chili Pepper Mines, LLC (2247); Friendsville Mine LLC (8489); Liberty Mine, LLC (3730); Red Brush West, LLC (3940); Solar Sources Mining, LLC (3628); Trust Resources, LLC (1983); Vigo Coal Land, LLC (9585); Vigo Coal Operating Co., LLC (7462); Vigo Coal Sales, LLC (1325); Vigo Cypress Mine LLC (9409); Vigo Equipment, LLC (5629); Vigo Sunna, LLC (7468); White Stallion – Eagle River, LLC (6743); White Stallion – Solar, LLC (9457); White Stallion Acquisition, LLC (2298); and White Stallion Holdings, LLC (3645). The location of the Debtors' headquarters is:  250 N. Cross Pointe Blvd., Evansville, Indiana 47715.

[2]    Capitalized terms used but not otherwise defined herein have the meanings given to such terms in the Motion.

this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard any statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted on an interim basis as set forth herein.

2.      The final hearing (the "Final Hearing") on the Motion shall be held on _____, 2020, at __:__ _.m., prevailing Eastern Time.  Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Eastern Time, on _____, 2020, and shall be served on:  (a) the Debtors, 250 N. Cross Pointe Blvd., Evansville, Indiana 47715, Attn:  David J. Beckman (Dave.Beckman@fticonsulting.com);  (b) proposed counsel to the Debtors, Paul Hastings LLP, 71 South Wacker Drive, Suite 4500, Chicago, Illinois 60606, Attn:  Chris  Dickerson  (chrisdickerson@paulhastings.com),  Nathan  Gimpel (nathangimpel@paulhastings.com), Mike Jones (michaeljones@paulhastings.com), and Matthew Smart  (matthewsmart@paulhastings.com);  (c) proposed co-counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn:  M.  Blake  Cleary  (mbcleary@ycst.com),  Jaime  Luton  Chapman (jchapman@ycst.com), and S. Alexander Faris (afaris@ycst.com); (d) the Office of the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801,

Attn:  David Buchbinder (david.buchbinder@usdoj.gov); (e) counsel to any statutory committee appointed in these chapter 11 cases; (f) counsel to the Prepetition Term Loan Agent and DIP Agent, Simpson Thacher & Bartlett LLP, 425 Lexington Ave., New York, New York 10017, Attn:  Kathrine A. McLendon (kmclendon@stblaw.com) and Dov Gottlieb (dov.gottlieb@stblaw.com), and Bailey & Glasser LLP, 209 Capitol Street, Charleston, West Virginia 25301, Attn:  Kevin W. Barrett (kbarrett@baileyglasser.com); and (g) counsel to the Prepetition ABL Agent.

3.      The Debtors are authorized, but not directed, on an interim basis to:

(i)     continue the Insurance Policies and to pay any prepetition or postpetition obligations under the Insurance Policies, the Brokerage Fees, and any other amounts related to the Insurance Policies, including any amounts owed to the Brokers;

(ii)    renew, amend, supplement, extend, reduce, or purchase insurance policies to the extent that the Debtors determine that such action is in the best interest of their estates;

(iii)   honor the terms of the Premium Financing Agreements and pay installment payments thereunder; and

(iv)    enter into, renew, amend, supplement, or extend the Premium Financing Agreements as necessary, in the ordinary course of business consistent with past practices to the extent the Debtors determine that such action is in the best interests of their estates.

4.      Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed:  (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' or any other party in interest's right to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Interim Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the

Bankruptcy Code; (f) a waiver or limitation of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or any other party in interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Interim Order are valid and the Debtors and all other parties in interest expressly reserve their rights to contest the extent, validity, or perfection or to seek avoidance of all such liens.  Any payment made pursuant to this Interim Order should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

5.      The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order without any duty of further inquiry.

6.      The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with any Insurance Policies and the Premium Financing Agreements.

7.      The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

8.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

9.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

10.      The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

11.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

27416375.1

# **EXHIBIT B**

## **Proposed Final Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| WHITE STALLION ENERGY, LLC, *et al.*,[1] | ) | Case No. 20-13037 (LSS) |
| | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Re: Docket Nos. _** |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS**
**TO (A) PAY THEIR OBLIGATIONS UNDER INSURANCE POLICIES**
**ENTERED INTO PREPETITION AND (B) RENEW, SUPPLEMENT, MODIFY,**
**OR PURCHASE INSURANCE COVERAGE AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession

(collectively, the "Debtors") for entry of a final order (this "Final Order"):  (a) authorizing, but not

directing, the Debtors to (i) pay their obligations under the insurance policies entered into

prepetition and (ii) renew, supplement, modify, or purchase insurance coverage in the ordinary

course; and (b) granting related relief, all as more fully set forth in the Motion; and upon the First

Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334 and the *Amended Standing Order of Reference* from the United States District Court for

the District of Delaware, dated February 29, 2012; and this Court having found that this is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2), and that this Court may enter a final order consistent

with Article III of the United States Constitution; and this Court having found that venue of this

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  White Stallion Energy, LLC (2360); Alchemy Fuels, LLC (N/A); Carbo*Prill, LLC (8385); Chili Pepper Mines, LLC (2247); Friendsville Mine LLC (8489); Liberty Mine, LLC (3730); Red Brush West, LLC (3940); Solar Sources Mining, LLC (3628); Trust Resources, LLC (1983); Vigo Coal Land, LLC (9585); Vigo Coal Operating Co., LLC (7462); Vigo Coal Sales, LLC (1325); Vigo Cypress Mine LLC (9409); Vigo Equipment, LLC (5629); Vigo Sunna, LLC (7468); White Stallion – Eagle River, LLC (6743); White Stallion – Solar, LLC (9457); White Stallion Acquisition, LLC (2298); and White Stallion Holdings, LLC (3645). The location of the Debtors' headquarters is:  250 N. Cross Pointe Blvd., Evansville, Indiana 47715.

[2]    Capitalized terms used but not otherwise defined herein have the meanings given to such terms in the Motion.

proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and

this Court having found that the relief requested in the Motion is in the best interests of the Debtors'

estates, their creditors, and other parties in interest; and this Court having found that the Debtors'

notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other

notice need be provided; and this Court having reviewed the Motion and having heard any

statements in support of the relief requested therein at a hearing before this Court (the "Hearing");

and this Court having determined that the legal and factual bases set forth in the Motion and at the

Hearing establish just cause for the relief granted herein; and upon all of the proceedings had

before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY

ORDERED THAT:

1.      The Motion is granted on a final basis as set forth herein.

2.      The Debtors are authorized, but not directed, on a final basis to:

    (i)      continue the Insurance Policies and to pay any prepetition or postpetition obligations under the Insurance Policies, the Brokerage Fees, and any other amounts related to the Insurance Policies, including any amounts owed to the Brokers;

    (ii)     renew, amend, supplement, extend, reduce, or purchase insurance policies to the extent that the Debtors determine that such action is in the best interest of their estates;

    (iii)    honor the terms of the Premium Financing Agreements and pay any installment payments; and

    (iv)    enter into, renew, amend, supplement, or extend the Premium Financing Agreements as necessary, in the ordinary course of business consistent with past practices to the extent the Debtors determine that such action is in the best interests of their estates.

3.      Notwithstanding the relief granted in this Final Order and any actions taken

pursuant to such relief, nothing in this Final Order shall be deemed:  (a) an admission as to the

validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the

Debtors' or any other party in interest's right to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Final Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or any other party in interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Final Order are valid and the Debtors and all other parties in interest expressly reserve their rights to contest the extent, validity, or perfection or to seek avoidance of all such liens.  Any payment made pursuant to this Final Order should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

4.      The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order without any duty of further inquiry and without liability for following the Debtors' instructions.

5.      The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with any Insurance Policies and the Premium Financing Agreements.

6.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

7.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

8.      The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

9.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.