**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| WHITE STALLION ENERGY, LLC, *et al.*,[1] | ) Case No. 20-13037 (LSS) |
| Debtors. | ) (Jointly Administered) |

# DECLARATION OF DAVID J. BECKMAN
## IN SUPPORT OF DEBTORS' USE OF CASH COLLATERAL

I, David J. Beckman, hereby declare as follows under penalty of perjury that the following is true and correct to the best of my knowledge, information and belief:

1. I am the Chief Operating Officer ("COO") of White Stallion Energy, LLC ("WSE"), one of the above-captioned debtors and debtors in possession (collectively, the "Debtors"). I have served as a financial advisor to the Debtors and was appointed as WSE's COO on October 30, 2020. I am a Senior Managing Director at FTI Consulting, Inc. ("FTI"), a leading global business advisory firm with over 50 offices worldwide and over 4,000 professionals, where I am the practice leader of FTI's Global Mining Advisory Practice.

2. I submit this declaration (this "Declaration") in support of the Debtors' motion seeking authority to, among other things, utilize cash collateral [Docket No. 18] (the "Motion").[2]

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: White Stallion Energy, LLC (2360); Alchemy Fuels, LLC (N/A); Carbo*Prill, LLC (8385); Chili Pepper Mines, LLC (2247); Friendsville Mine LLC (8489); Liberty Mine, LLC (3730); Red Brush West, LLC (3940); Solar Sources Mining, LLC (3628); Trust Resources, LLC (1983); Vigo Coal Land, LLC (9585); Vigo Coal Operating Co., LLC (7462); Vigo Coal Sales, LLC (1325); Vigo Cypress Mine LLC (9409); Vigo Equipment, LLC (5629); Vigo Sunna, LLC (7468); White Stallion – Eagle River, LLC (6743); White Stallion – Solar, LLC (9457); White Stallion Acquisition, LLC (2298); and White Stallion Holdings, LLC (3645). The location of the Debtors' headquarters is: 250 N. Cross Pointe Blvd., Evansville, Indiana 47715.

[2] Capitalized terms used but not defined herein have the meanings given to such terms in the Motion.

27546357.1

3. Unless otherwise stated, all matters set forth in this Declaration are based on my personal knowledge, my review of relevant documents, information supplied to me by other professionals at FTI, and my views based on my experience and knowledge of the Debtors' business and financial conditions. Except as otherwise noted, I have personal knowledge of the matters set forth herein.[3] I am not being specifically compensated for this testimony other than through payments to be received by FTI as a professional the Debtors are seeking to retain pursuant the motion filed on December 29, 2020 [Docket No. 189]. I am over the age of 18 years, and I authorized to submit this Declaration on behalf of the Debtors. If I were called upon to testify, I could and would competently testify to the facts set forth herein.

**I.        Use of Cash Collateral.**

4. On the evening of December 17, 2020, just over two weeks into these chapter 11 cases, prior to entry of a final order approving the DIP Financing, and after forcing the Debtors and Debtors' professionals to spend a significant amount of time preparing and defending the DIP Facility, including working around the clock to meet aggressive and arbitrary milestones under the DIP Facility related to a potential multi-year contract with Duke Energy, the Term Loan Lenders notified the Debtors that they were terminating the DIP Financing. The Debtors reacted immediately in a manner consistent with their fiduciary duties and engaged the Term Loan Lenders on potential alternative paths. Immediately upon the Term Loan Lenders and their counsel informing the Debtors of their decision to terminate the proposed DIP Financing, I asked them collectively for their thoughts on the next steps for the Debtors. The response was that they, the Term Loan Lenders, had no definitive plans for 'next steps' but that they had decided that they

---

[3] Certain of the disclosures relate to matters within the personal knowledge of other professionals at FTI and are based on information provided by them.

27546357.1

would not provide any further financial support to the Debtors. This was a marked difference in the Term Loan Lenders' strategy from that which had been the basis of the Term Loan Lenders pushing the Debtors to file for chapter 11 and enter into the DIP Facility less than two weeks earlier. I also stated that the Debtors wanted to understand their next steps so, if appropriate, we could prepare for the smooth transition into a new postpetition strategy for the Debtors. The answer was simply that they had yet to consider the implications of the DIP Facility termination.

5.  I believe that, after termination of the DIP Facility, the Debtors were left with only one alternative to an immediate and value-destructive conversion to chapter 7: reach a deal with the ABL Lenders to use the ABL Lenders' Cash Collateral to fund the administration of the Debtors' estates. I further believe that the consensual use of Cash Collateral will allow the Debtors to fulfill their fiduciary duties in a way that provides optionality while they chart a value-maximizing path forward through these chapter 11 cases.

6.  I believe that the Debtors' use of Cash Collateral pursuant to the terms of the Final Order is the Debtors' only feasible way to maximize the value of their estates in an efficient, responsible manner for the benefit of *all* of their stakeholders.

7.  I believe that a conversion to chapter 7 would leave each party in interest—including the Term Loan Lenders—in a worse position than if the Debtors are able to utilize the ABL Lenders' Cash Collateral. For example, if the Debtors are authorized to use the ABL Lenders' Cash Collateral, the equipment lessors will have a chance for a new party to assume their leases. The royalty holders will continue to be paid postpetition royalty payments and stand to benefit further if a purchaser buys the mines on their property through an orderly process. There also is a greater chance that the employees may be able to return to work if the Debtors are able to sell the mines in an expeditious manner.

27546357.1

3

8.     Based on my understanding of the facts, I believe that the ABL Lenders also directly benefit from the Debtors' use of Cash Collateral. Had these chapter 11 cases converted to chapter 7 when the Term Loan Lenders terminated the DIP Facility, the timely repayment of the ABL Facility would have been jeopardized. The stability offered by the consensual use of the ABL Lender's Cash Collateral has provided the Debtors with the ability to successfully collect on prepetition account receivables. I believe that, without the Debtors' postpetition coal shipments made possible by the use of Cash Collateral, these customers may have withheld payment on the prepetition accounts receivable in anticipation of expected damages they would have incurred if the Debtors ceased coal shipments postpetition.

9.     Further, if these chapter 11 cases are permitted to collapse notwithstanding the ABL Lenders' support, I believe that the likelihood that the Debtors' property and assets could be dealt with in a way that benefits the public interest, and the Debtors' creditor base as a whole, drops precipitously.

10.     As these chapter 11 cases proceed, the Debtors will naturally incur costs associated with, among other things, the administration of these cases and the preservation of their assets. This includes amounts that, I believe, benefit all parties, including the Term Loan Lenders. Examples of Cash Collateral use that I believe directly benefits the Term Loan Lenders include, among others, using Cash Collateral to fund repairs on equipment that is going to be used during the course of these chapter 11 cases, provide security at each of the mining locations, maintain insurance on all of the Term Loan Lenders' collateral, and make other necessary payments described in the Debtors' first-day motions, all in an effort to protect the value of their assets, including those that comprise Term Loan Lenders' collateral. Despite all of this, it is my

27546357.1

understanding that the Term Loan Lenders now stand alone as the sole party objecting to the Debtors' use of Cash Collateral pursuant to the Final Order.

11. Overall, I believe that the benefits derived from continuing a value-maximizing process, made possible through their utilization of Cash Collateral, far outweigh the costs that the Debtors may incur. This is particularly true given that, based on my understanding and belief, the post-conversion responsible party will need to incur many of the same or similar costs as anticipated under the Debtors' proposed budget as these costs do not go away if these cases are converted. I believe that the same cannot be said for the potential benefits resulting from the Debtors exploring value-maximizing directions for these cases while utilizing cash collateral.

12. Based on the foregoing, I believe that the terms of the use of Cash Collateral as set forth in the proposed Final Order are reasonable and are in the best interest of the Debtors' estates.

## II. The Duke Energy Stockpile.

13. Certain stockpiles of extracted coal presently stored on the Debtors' property (the "Duke Energy Stockpile") consist of coal that the Debtors sold to Duke Energy prepetition pursuant to their existing supply agreement with Duke Energy.

14. Although the existing supply agreement contemplates the Debtors delivering coal from the Duke Energy Stockpile to Duke Energy without any further payment from Duke Energy, the parties are in the process of documenting an amendment to the existing agreement under which the Debtors will deliver the coal to Duke Energy in exchange for a fee. I understand the parties intend to seek the Court's permission to enter into the amendment once it has been finalized.

27546357.1

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true correct.

Dated: January 3, 2021  /s/ David J. Beckman
Denver, Colorado  David J. Beckman
 Chief Operating Officer
 White Stallion Energy, LLC

27546357.1