**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| WHITE STALLION ENERGY, LLC, *et al.*,[1] | Case No. 20-13037 (LSS) |
| Debtors. | (Jointly Administered) |
| | Hearing Date: January 19, 2021 at 2:00 PM |
| | Objection Deadline:  January 5, 2021 |
| | **Re:  Docket Nos. 18, 29, 30, 69 and 154** |

**THE DIP LENDERS' OPPOSITION**
**TO STEVEN E. CHANCELLOR'S MOTION FOR RECONSIDERATION**[2]

A postpetition financing order may be disturbed only upon a showing that postpetition credit was extended in bad faith. The rationale behind this very narrow exception is obvious and well-supported by law: section 364 of the Bankruptcy Code encourages lenders to provide financing to debtors in exigent circumstances by offering lenders appropriate protections for the risks they undertake.  These protections are all the more critical when necessary financing is extended pursuant to an interim order to avoid irreparable harm to the debtor and its estate.  In this case, given the dire circumstances of the Debtors' financial condition,[3] the DIP Lenders were

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  White Stallion Energy, LLC (2360); Alchemy Fuels, LLC (N/A); Carbo*Prill, LLC (8385); Chili Pepper Mines, LLC (2247); Eagle River Coal, LLC (6614); Friendsville Mine LLC (8489); Liberty Mine, LLC (3730); Red Brush West, LLC (3940); Solar Sources Mining, LLC (3628); Trust Resources, LLC (1983); Vigo Coal Land, LLC (9585); Vigo Coal Operating Co., LLC (7462); Vigo Coal Sales, LLC (1325); Vigo Cypress Mine LLC (9409); Vigo Equipment, LLC (5629); Vigo Sunna, LLC (7468); White Stallion – Eagle River, LLC (6743); White Stallion – Solar, LLC (9457); White Stallion Acquisition, LLC (2298); and White Stallion Holdings, LLC (3645).  The location of the Debtors' headquarters is:  250 N. Cross Pointe Blvd., Evansville, Indiana 47715.

[2] The term "DIP Lenders" refers, collectively, to Riverstone Credit Management, LLC, as administrative and collateral agent under the Credit Agreement dated as of April 17, 2017 (as amended), and the lenders pursuant thereto, Riverstone Credit Partners, L.P., Summit Partners Credit Fund II, L.P., Summit Partner Credit Fund B-2, L.P., Summit Partners Credit Offshore Intermediate Fund, II, L.P., Summit Investors Credit II, LLC and Summit Investors Credit (UK), L.P.  These parties also constitute the prepetition "Term Loan Lenders".

[3] Dec 4 Hr'g Tr. 41:20–23.

unquestionably taking a risk when they extended postpetition credit to the Debtors' estate to fund critical employee and insurance expenditures.  The court expressly found that the DIP Lenders acted in good faith, and for this reason (and others), they were granted the protections of section 364(e) in the Initial Interim Order (as defined below)[4], protecting the financing provided pursuant to the order absent a finding of bad faith.

Thus, to succeed on his Motion, Mr. Chancellor must demonstrate that there is new evidence establishing that the DIP Lenders acted in bad faith in negotiating the DIP Facility and in extending credit pursuant to the Initial Interim Order.  Mr. Chancellor does not allege new evidence of bad faith in connection with negotiating and extending the financing, and the record and hearing transcript exhibit the Debtors' financial distress and DIP Lenders' good faith in negotiating and extending the financing.  Indeed, the Court recognized that the DIP Lenders acted as good corporate citizens in negotiating a resolution of objections to the DIP Financing to permit the Debtors to make payments to their employees and insurers without many of the typical bells and whistles of an interim financing order.  As a result, Mr. Chancellor is barred by section 364(e) from modifying the Initial Interim Order.

Entry of the Initial Interim Order, and particularly this interim order providing the minimum of protections accorded DIP lenders who provide purely new money loans to fund actual and critical expenses of the estate, does not present a manifest injustice that demands reconsideration.  Indeed, Mr. Chancellor contests terms that are not found in the Initial Interim Order or are noncontroversial and should not upset the entire financing given the circumstances and manifest good faith.  And because the Debtors have already disbursed and distributed the money lent, any challenge to the Initial Interim Order should be considered as moot.

---

[4] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Initial Interim Order.

Accordingly, Mr. Chancellor's Motion must be denied.

## BACKGROUND

On December 2, 2020, White Stallion Energy, LLC and certain affiliated entities filed voluntary petitions for relief in this Court under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses as debtors in possession under sections 1107 and 1108 of the Bankruptcy Code.

On December 4, 2020, the Court conducted a First Day Hearing on various motions, including *Debtors' Motion Seeking Entry of Interim and Final Orders (1) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief.* [Dkt. 18].

After considering the arguments of counsel for the Debtors, the senior secured lenders, and the U.S. Trustee, as well as the Debtors' Motion, the declarations of Mr. Tobias and Mr. Beckman in support of the Defendants' requested relief, and after considering the dire financial circumstances of the Debtors and reviewing, in detail, the terms of Debtors' proposed Initial Interim Order, the Court authorized the funding of approximately $1.4 million under the DIP Facility. As explained to the Court at the First Day Hearing, the funding under the DIP Facility was earmarked (along with $800,000 in cash collateral of KeyBank National Association ("KeyBank"), the lender under the Debtors' prepetition ABL facility) for the immediate payment of necessary employee obligations in the amount of $1.364 million, insurance expenses in the amount of $462,000, and D&O tail insurance in the amount of $400,000. *See* Dec. 4 Hr'g Tr. 46:1–5; *see also* 84:11–85:3.

The Court memorialized its authorization of the DIP Financing in the *Initial Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral,*

*(II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* ("Initial Interim Order") entered on December 8, 2020. [Dkt. 69].  Importantly, the DIP Lenders did not receive any special consideration or protections for those loans beyond standard superpriority claims for new money and non-priming liens on the DIP Collateral (as defined in the Initial Interim Order), other than priming liens on their own prepetition collateral as Term Lenders.  *See, e.g., id.*

On December 22, 2020, Mr. Chancellor filed his *Motion of Steven E. Chancellor for Reconsideration of the Entry of the Initial Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief*  ("SEC Mot."), [Dkt. 154], seeking to vacate the Initial Interim Order "*ab initio*" or, alternatively, to significantly "modify" the Initial Interim Order to eliminate various terms that either do not exist or are subject to a final order.  SEC Mot. ¶ 36.  Mr. Chancellor also seeks a determination that the protections of the Initial Interim Order "expired."  *Id.*

The basis for Mr. Chancellor's request to vacate or otherwise modify the Initial Interim Order is twofold.  Mr. Chancellor alleges that "new evidence not available to the Court at the First Day Hearing requires reconsideration of the Initial Interim Order" and that "reconsideration of the Initial Interim Order is required to prevent manifest injustice and correct a clear error of law or fact." SEC Mot. ¶¶ 11, 13.    Indeed, Mr. Chancellor appears to allege that this Court "misapprehended the facts of this case," warranting reconsideration of the Initial Interim Order. SEC Mot. ¶ 38.  But Mr. Chancellor's allegations are irrelevant the DIP Facility and insufficient to modify or vacate this Court's entry of the Initial Interim Order.

First, Mr. Chancellor asserts that the Initial Interim Order should be vacated or substantially modified because "the Prepetition Lenders took control of the Debtors and then caused the filing

4

of these Bankruptcy Cases in order to seize valuable business opportunities from the Debtors for their own." SEC Mot. ¶ 40. No evidence was submitted in support of this allegation.

Second, in what is perhaps the most bizarre aspect of his Motion, Mr. Chancellor purports to attack the terms of a *still* as-to-be-determined sales process (no motion for sale has been filed with the Court, even as of the date hereof), as well as various other provisions of the Initial Interim Order, including terms related to roll-ups, lender fees, releases, and waivers that simply do not exist. *Id.* The challenge is misplaced because these provisions did not take effect in the Initial Interim Order or any other subsequent order. Other remaining challenges, such as his objection to the Challenge Period, have not been limited by the Initial Interim Order in any respect. Indeed, the Court has repeatedly expressed its willingness to extend the Challenge Period upon proper motion. Dec. 21 Hr'g Tr. 22:4–11.

Third, Mr. Chancellor attacks the business judgment of the *Debtors* in seeking DIP financing and argues that this is a sufficient basis for vacating the Initial Interim Order. *Id.* at ¶ 42. Particularly given the expenditure of the money lent to the Debtors' employees and insurers, expenditures expressly authorized pursuant to other court orders, any challenge to the Debtors' business judgment is not only ill-founded but also moot.

And, lastly, Mr. Chancellor alleges that discovery of the DIP Lenders' prepetition conduct will substantiate his allegations and provide grounds for the relief he seeks herein. *Id.* at ¶ 41. As the Court will undoubtedly be called upon to consider, Mr. Chancellor improperly conflates his wild allegations of prepetition conspiracy theories with lack of good faith in extending postpetition financing. Whether or not Mr. Chancellor is entitled to take discovery into those matters—a notion the DIP Lenders contest—that discovery has no relevance whatsoever to the Lenders' bona fides in extending $1.4 million in new money loans to pay the Debtors' critical expenditures.

As the foregoing establishes, Mr. Chancellor's Motion is dead on arrival. As discussed in more detail below, the only appropriate avenue to modify a DIP financing order is if the DIP Lenders extended credit under the DIP Facility in bad faith. Otherwise, the challenge is mooted upon disbursement of the funds pursuant to the DIP financing order. He fails to make this allegation in his Motion, much less to come forward with any "new evidence" in support of such a claim. *See, e.g.,* SEC Mot. Accordingly, Mr. Chancellor's motion must be denied.

## LEGAL STANDARD

Any attempt to modify or revoke financing orders is heavily scrutinized because these orders are typically the lifeblood of a debtor-in-possession's reorganization efforts. *In re MRPC Christiana, LLC*, No. 18-26567 (SLM), 2019 WL 6652237, at *1 (Bankr. D.N.J. Dec. 5, 2019). Indeed, the authorization is protected from reversal or modification "as long as the order has not been stayed pending appeal and the creditor extended credit in good faith." *In re Grand Valley Sport & Marine, Inc.*, 143 B.R. 840, 848 (Bankr. W.D. Mich. 1992). Absent a showing of bad faith in the extension of postpetition financing, an interim order may not be modified. *In re N. Atl. Millwork Corp.*, 155 B.R. 271, 280 (Bankr. D. Mass. 1993) (citing *In re Kham & Nate's Shoes No. 2, Inc.*, 908 F.2d 1351, 1355 (7th Cir. 1990)).

In the face of these overwhelming challenges, Mr. Chancellor seeks relief under Federal Rule of Civil Procedure 59(b), as made applicable by Rule 9023 of the Bankruptcy Order, which applies to interlocutory orders. Because the DIP Lenders relied on this Court's authorization, as they would a final order, to fund the $1.4 million of the DIP Facility subject to the protections of section 364(e) of the Bankruptcy Code's safe harbor provisions, the DIP Lenders submit that this Motion is more properly analyzed under the heightened scrutiny of Federal Rule of Civil Procedure 60(b)(6), as made applicable by Rule 9024 of the Bankruptcy Code. Regardless, "[a]s to the 'substance' the review under both Rule 9023 and Rule 9024 boils down to this—'the purpose of a

motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence.'" *In re Energy Future Holdings Corp.*, 575 B.R. 616, 630 (Bankr. D. Del. 2017).  A motion for reconsideration should be granted sparingly so as to not waste judicial resources.  *In re NNN 400 Capital Ctr. 16, LLC*, No. 16-12728 (JTD), 2019 WL 5073844, at *1 (Bankr. D. Del. Oct. 9, 2019) (citing *In re New Century Holdings, Inc.*, 502 B.R. 416, 421 (Bankr. D. Del. 2013)); *In re W.R. Grace & Co.*, 556 B.R. 113, 118 (Bankr. D. Del. 2016).  That applies with particular force to an order approving debtor-in-possession financing, particularly one upon which the lenders relied in extending new money loans.  Here, Mr. Chancellor's motion must be denied because his Motion fails under both Rule 9023 and Rule 9024.

## ARGUMENT

**A. Mr. Chancellor fails to submit any evidence that the DIP Lenders extended credit under the DIP Facility in bad faith; therefore, the Initial Interim Order may not be modified pursuant to section 364(e) of the Bankruptcy Code's safe harbor provision.**

**1.    The safe harbor provision of section 364(e) of the Bankruptcy Code applies to the Initial Interim Order.**

Section 364(e) provides:,

> The reversal or modification on appeal of an authorization under this section to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.

11 U.S.C. § 364(e).  Even though section 364(e) only addresses modification on appeal, bankruptcy courts have also protected interim financing orders from modification, barring a finding of bad faith.

"Lenders who deal with the debtors and request and receive court approval for interim financing arrangements rely on provisions contained in interim orders just as they would rely on

provisions contained in a final, appealable order." *In re Fleetwood Enterprises, Inc.*, 427 B.R. 852, 859–860 (Bankr. C.D. Cal. 2010) (citing *In re Adams Apple*, 829 F.2d 1484, 1488 (9th Cir. 1987)). Indeed, "although § 364(e) speaks only of modification on appeal, it instantiates the principle that bankruptcy judges may make binding commitments to give priority to new credit." *In re N. Atl. Millwork Corp.*, 155 B.R. at 280 (citing *In re Kham & Nate's Shoes No. 2, Inc.*, 908 F.2d at 1355)). "To allow an interim financing order which is non-modifiable on its face to be modified subsequent to its issuance is inconsistent with the protection given to [the creditor] as a DIP Lender under section 364(e). Put simply, section 364(e) would offer little incentive to lenders if the protection was limited only to appeals since the bankruptcy court's modification of its own orders during the interim period poses the same risks as does reversal on appeal." *In re Fleetwood Enterprises, Inc.*, 427 B.R. at 860 (citing *In re Kham & Nate's Shoes No. 2, Inc.*, 908 F.2d 1351, 1355 (7th Cir. 1990)).

Section 364(e) explicitly applies to an authorization under section 364 of the Bankruptcy Code. *See* 908 F.2d at 1355. This "authorization" is generally encompassed in a financing order signed by the court. *Id.*; *In re Blumer*, 66 B.R. 109, 113 (Bankr. 9th Cir.1986), *aff'd*, 826 F.2d 1069 (9th Cir. 1987). "The incorporation of the language of section 364(e) into the interim order has the effect of making that protection part of the relief ordered by the court such that is applies pre-appeal." *In re Fleetwood Enterprises, Inc.*, 427 B.R. at 859.

At the December 4 Hearing, the Court granted section 364(e) protection to the DIP Lenders based on the record before it. Dec 4 Hr'g Tr. 70:7–16. The Court memorialized this ruling in the Interim DIP Order, entered on December 8, 2020. Initial Interim Order at 14, ¶ G.iv. Specifically, the Court made the finding that "[t]he DIP Agent and the DIP Lenders have acted in good faith in agreeing to provide the DIP Facility approved by this Initial Interim Order . . . and their reliance on the provisions of this Initial Interim Order is in good faith." Initial Interim Order at 14, ¶ G. iv.

8

The Court further found that "[t]he DIP Facility Term Sheet, and the DIP Facility provided for thereunder, and the use of Cash Collateral, each as authorized hereunder, have been negotiated in good faith and at arm's length among the Debtors, the DIP Secured Parties, and the Prepetition Secured Parties, respectively, and the terms of the DIP Facility and the use of Cash Collateral, respectively, are fair and reasonable under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration." *Id.* at 15, ¶ G.v.

Particularly in light of the Court's detailed findings relative to good faith based on the record before it at the interim hearing, the protections of section 364(e) of the Bankruptcy Code apply to the DIP Lenders under the Initial Interim Order.

### 2.    Mr. Chancellor has not presented any new evidence that the DIP Lenders acted in bad faith in extending credit under the DIP Facility.

DIP lenders "are entitled as a matter of law to rely on the terms of the bankruptcy court's financing orders unless they are shown to have acted in bad faith." *In re W. Pac. Airlines, Inc.*, 224 B.R. 799, 803 (Bankr. D. Colo. 1998). "If creditors fear that the rug will be pulled out from under them, they will hesitate to lend. So § 364(e) . . . . disable[s] courts from backtracking on promises in the absence of bad faith, *which is a very narrow exception. In re N. Atl. Millwork Corp.*, 155 B.R. at 280 (citing *In re Kham & Nate's Shoes No. 2, Inc.*, 908 F.2d at 1355) (citations omitted, emphasis added).

"Bad faith" is not defined by the Bankruptcy Code. However, bad faith has been broadly defined as:

> the opposite of 'good faith,' generally implying or involving actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal or fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister move. Term 'bad faith' is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of the dishonest purpose or moral obliquity; it is differed from a

negative idea of negligence in that it contemplates a state of mind affirmatively operating with a furtive design or ill will.

*In re Resorts Int'l, Inc.*, 145 B.R. 412, 469 (Bankr. D.N.J. 1990) (citing Black's Law Dictionary 127 (5th ed. 1979)). "Misconduct defeating good faith includes fraud, collusion, . . . an attempt to take grossly unfair advantage of others," acting "for an improper purpose" or with "[k]nowledge of the illegality of the transaction." *In re Adams Apple*, 829 F.2d at 1489.

The proper inquiry under § 364(e) is whether the lender *extends postpetition credit* in good faith. *In re Grand Valley Sport & Marine, Inc.*, 143 B.R. at 848. Actions unrelated to the financing are not relevant to a finding of good faith; instead, "[courts] look to the integrity of an actor's conduct *during the proceedings*." *In re Adams Apple*, 829 F.2d at 1489 (emphasis added). To show bad faith, a party must argue "that the DIP lender acted in bac faith *in connection with the negotiation of the DIP loan or entry of the Final DIP Order*." *In re General Growth Properties, Inc.*, 423 B.R. 716, 722 (S.D.N.Y. 2010) (emphasis added).

Importantly, Mr. Chancellor does not contend that the DIP Lenders acted in bad faith in connection with the negotiation of the DIP Facility or entry of the Initial Interim Order. *See, e.g.,* SEC Mot. Instead, Mr. Chancellor alleges that "new evidence" has become available that would support vacating the Initial Interim Order in its entirety, or substantially altering it. However, Chancellor's purported "new evidence," or rather unrelated suspicions and conspiracy theories, is irrelevant to the negotiations of the DIP Facility or entry of the Initial Interim Order. Specifically, Mr. Chancellor:

1. Argues that the prepetition lenders took control of the debtors to seize valuable business opportunity. SEC Mot. ¶ 40.
2. Argues that the Debtors sought to engineer a quick sale. *Id.*
3. Asserts that the DIP Lenders demanded excessive fees and unwarranted adequate protection. *Id.*

4. Argues that there exist limitations on the Committee's, other creditors' and other parties-in-interests' ability to challenge the DIP Lenders' and Prepetition claims, liens and pre-petition conduct. *Id.*

5. Argues that discovery has not yet been responded to. *Id.* at ¶ 41.

6. Questions the need for cash given the "cash balance on December 21 of approximately $5.8 million generated by the Debtors' post-petition operations." *Id.* at ¶ 42.

None of the above allegations are related to the DIP Lenders' good faith or alleged bad faith in extending credit under the DIP Facility.  Mr. Chancellor does not allege that the DIP Facility was the product of anything other than arm's-length, good faith negotiations.  He does not contend that there was fraud, collusion, or illegality.  He does not allege that the postpetition financing was commercially unreasonable under the dire circumstances of these cases.  He does not suggest that other lenders were willing to provide funding.  There are simply *no allegations* contained within the Motion that would support a finding of bad faith to permit modification of the Initial Interim Order. On this basis alone Mr. Chancellor's motion should be denied.

Moreover, Mr. Chancellor also completely ignores the record—namely the DIP Financing Motion, the Debtors' declarations in support thereof, and the transcript from the First Day Hearing—in his zeal to disturb the Initial Interim Order and, further, fundamentally misapprehends the severity of the circumstances that led the Debtors to the precipice that they were teetering on when the cases were filed.  The record makes clear both the exigent circumstances surrounding the financing and the vigorous negotiation and revision that went into the good-faith finding.

In his role as Debtors' Chief Operating Officer, Mr. Beckman averred in his declaration in support of the Debtors' Motion for DIP Financing:

As of the Petition Date, I understand that **the Debtors' total cash balance is approximately $3,000 in available cash**, after accounting for segregated payroll funds, which is woefully insufficient to continue paying their debts as they come due, and, despite their best efforts, they do not have readily available sources of additional financing. Accordingly, immediate access to the DIP Financing and Cash Collateral is essential. Without immediate access, the Debtors will be unable to

11

continue these chapter 11 cases thereby causing immediate and irreparable harm to
the value of the Debtors' enterprise value.

Beckman Decl. [Dkt. 30] at ¶ 10 (emphasis added). These were (and are) Debtors *in extremis*.

Given the severity of the Debtors' liquidity crisis, the DIP Lenders agreed to immediately fund a

small portion of the DIP Facility to ensure payment of critical expenditures, namely "employee

expenses in the amount of $1.364 million, an insurance expense in the amount of $462,000 . . .

and, in addition, $400,000 in the D&O tail insurance." Dec. 4 Hr'g Tr. 46:1–5; *see also* 84:11–

85:3. The rationale for funding in this manner was two-fold: (1) to establish a short runway for

the Debtors to attempt to secure a contract with Duke Energy to provide a potential path for

operations to resume, and (2) to address Keybank's concerns about limiting the use of its cash

collateral pending further order of the Court. *See* Initial Interim Order, Ex. 1.

In authorizing the DIP Facility at the First Day Hearing, the Court acknowledged that the

Debtors need for money was "apparent." Dec. 4 Hr'g Tr. at 47:25–48:1. The Court also expressed

the view, with respect to the more limited initial financing, that the "lenders are being good

corporate citizens in choosing the obligations that they are willing to fund during this interim

period." Dec. 4 Hr'g Tr. at 85:12–15. For his part, Mr. Chancellor entirely ignores the exigencies

of the situation and the immediate benefit the Debtors (and the Debtors' employees and new

directors) received upon authorization of the DIP Facility and the extension of funds postpetition,

which, by the Debtors' own admission, would not have materialized from a source other than the

DIP Lenders.

Mr. Chancellor also disregards the reality that the Court considered the testimony of Mr.

Beckman and Mr. Tobias in authorizing the DIP Facility, Dec. 4 Hr'g Tr. 85:4–6, including Mr.

Beckman's averments that "the terms of the DIP Financing: (a) [are] the product of arm's-length,

good-faith negotiation processes; (b) [are], given the circumstances, the best presently available

postpetition financing option for the Debtors; and (c) contains reasonable and appropriate financial terms and conditions under the circumstances." Beckman Decl. ¶ 3. Mr. Chancellor's Motion fails to address these findings completely.

Only after considering this testimony and the arguments of counsel, and after detailed and careful review of the proposed terms of the proposed Initial Interim Order with substantial input from the U.S. Trustee, *see, e.g.,* Dec. 4 Hr'g Tr., did the Court enter the Initial Interim Order on December 8, 2020, finding, *inter alia*, that "[t]he DIP Agent and the DIP Lenders have acted in good faith in agreeing to provide the DIP Facility approved by this Initial Interim Order . . . and their reliance on the provisions of this Initial Interim Order is in good faith." Initial Interim Order at 14, ¶ G. iv. The Court also made a finding that "[t]he DIP Facility Term Sheet, and the DIP Facility provided for thereunder, and the use of Cash Collateral, each as authorized hereunder, have been negotiated in good faith and at arm's length among the Debtors, the DIP Secured Parties, and the Prepetition Secured Parties, respectively, and the terms of the DIP Facility and the use of Cash Collateral, respectively, are fair and reasonable under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration." *Id.* at 15, ¶ G.v. Based upon the entered Initial Interim Order, the DIP Lenders extended credit under the DIP Facility for essential employee and insurance obligations the next day and the Debtors paid their employees and paid for their insurance.

Mr. Chancellor has not challenged these findings or otherwise offered any "evidence" regarding the extension of credit under the DIP Facility beyond what the Court considered at the First Day Hearing. Mr. Chancellor does not contend that the DIP Lenders acted in bad faith in connection with the financing and the record shows that the financing was entered into in good faith. *See In re General Growth Properties, Inc.*, 423 B.R. 716, 722 (S.D.N.Y. 2010) (dismissing

appeal as moot upon a finding that the appellant did not contend that the DIP Lender acted in bad faith in connection with the negotiation of the DIP loan or entry of the Final DIP order and where the proffered testimony from the First Day hearing was that the terms of the DIP loan were "vigorously negotiated at arm's length and in good faith."). He has not even made the required allegations. Therefore, Mr. Chancellor has failed to establish a basis for vacating this order "*ab initio*" or for setting aside *any* of the Court's good-faith and arm's length findings. Accordingly, Mr. Chancellor's Motion must be denied.

### 3. The entry of the Initial Interim Order did not result in manifest injustice.

"In order for a court to reconsider a decision due to 'manifest injustice,' the record presented must be so patently unfair and tainted that the error is manifestly clear to all who view it." *In re Energy Future Holdings Corp.*, 575 B.R. at 628 (citing *In re Titus*, 479 B.R. 362, 367–68 (Bankr. W.D. Pa. 2012)). Again, the only basis upon which Mr. Chancellor may challenge the DIP financing is a showing that the DIP Lenders extended credit under the DIP Facility in bad faith. He has not made this allegation in his Motion. Regardless, there exists no manifest injustice with respect to the Initial Interim Order. Quite the contrary. The $1.4 million advanced under the DIP Facility paid critical employee and insurance expenses and avoided the immediate liquidation of these cases, *see supra, ¶* 4, without granting any benefit or special consideration to the DIP Lenders beyond standard superpriority claims for new money and non-priming liens (except as to the liens of the Term Lenders). *See, e.g.*, Initial Interim Order. Accordingly, Mr. Chancellor's motion must be denied.

### 4. Mr. Chancellor's request to vacate the Initial Interim Order is moot.

"The policies behind section 364(e) . . . indicate that a claim is moot as soon as a lender has relied on the authorization . . ." *In re Foreside Management Co., LLC*, 402 B.R. 446, 451–52

14

(1st Cir. BAP 2009) (citing *In re Adams Apple*, 829 F.2d at 1489)).  Although there is some debate

when a financing order becomes moot, once the financing has been authorized, and the lender has

extended credit pursuant to the authorization, "those eggs cannot be unscrambled."  *Id.* at 452

(citing *In re Swedeland Dev. Group, Inc.*, 16 F.3d 552, 560–61 (3rd Cir. 1994) (acknowledging

that to the extent a postpetition loan has been completely disbursed, the validity of the debt incurred

and the superpriority lien securing it cannot be affected, and, therefore, no effective relief can be

granted).  In fact, the cases "seem unanimous" that an appeal is moot when funds from the

financing are "advanced and already spent."  *In re Swedeland Dev. Group, Inc.*, 16 F.3d 552, 563

n.13 (3rd Cir. 1994).

The Court authorized the DIP Facility upon entry of the Initial Interim Order on December

8, 2020. *See, e.g.,* Initial Interim Order.  Shortly thereafter, the DIP Lenders funded the DIP

Facility.  No party sought to stay the partial funding of the DIP Facility, nor has any party sought

a stay subsequent thereto.  And the Debtors have utilized those funds to address the critical

payments discussed *supra*.  *See In re Swedeland Dev. Group, Inc.*, 16 F.3d at 563 n.11 (presuming

money was spent when no contrary indication).  Mr. Chancellor's challenge to the Initial Interim

Order is therefore moot.  *In re Western Pacific Airlines, Inc.*, 181 F.3d 1191, 1196 n.4 (10th Cir.

1999) (noting that where funds have been fully distributed, the transaction merits "full 364(e)

protection.").  Accordingly, Mr. Chancellor's Motion must be denied.

### B.  Mr. Chancellor's Motion fails because he seeks to strike terms that do not exist in the Initial Interim Order, have no application to him, and are otherwise non-controversial.

Mr. Chancellor argues that the DIP Lenders are not entitled to the protections of various

alleged terms in the Initial Interim Order and, therefore, requests that they be stricken.

Specifically, Mr. Chancellor requests that this Court strike any protections afforded to the DIP

Lenders with respect to (1) roll-ups of prepetition loans; (2) good-faith and arm's length findings;

15

(3) payment of fees of the DIP Lenders and Prepetition Lenders; (4) section 506(c) and section 552(b) waivers; (5) credit bid rights; (6) releases and waivers of the Debtors' claims or causes of action against the DIP Lenders and Prepetition Lenders; and the (7) challenge period.  Leaving aside whether the Initial Interim Order can be modified at this point (which it cannot), the Initial Interim Order does not even provide the protections that Mr. Chancellor seeks to strike.

The Court did not approve any roll-up of the DIP Lenders' prepetition loans, as the order makes clear that any such approval was subject "to further order of the Court."  Initial Interim Order at 15, ¶ G.v. & vi.; 17–18, ¶ 2.iv.   The Court did not authorize the current payment of any fees of the DIP Lenders and Prepetition Lenders (nor have the DIP Lenders sought fees except a back-end fee).  *Id.* at 15, ¶ G.vi.  And the section 506(c) waiver for DIP Lenders and prepetition lenders and section 552(b) waiver for prepetition lenders remained subject to and would become effective only upon entry of the now moot Final Order.  *Id.* at 27, ¶ 8.  Because the terms do not exist in the Initial Interim Order, they cannot be struck.

Most of Mr. Chancellor's remaining grievances are easily resolved.  With respect to the credit bid rights, the Initial Interim Order contains non-controversial language that the DIP Lenders may credit bid, although the DIP Lenders' rights were limited the Initial Interim DIP Loan amount. *Id.* 41, ¶ 20.  In any event, the approval of credit bid rights with respect to the prepetition loans are the subject of further order of the Court.  Moreover, presumably, the parameters of any potential credit bidding will be determined upon notice and hearing upon the Debtors' submission of a motion to sell property and any subsequent order.  Further, while Mr. Chancellor confusingly challenges the Debtors' releases, the Initial Interim Order does not provide that third parties—i.e., Mr. Chancellor—are releasing any claims or causes of actions against the DIP Lenders and Prepetition Lenders.  *See, e.g.,* Initial Interim Order at 38.  Further, the stipulated releases granted with respect to the Debtors, *see Id.* 11–12, F.iv, remain subject to the Challenge Period."  *See, e.g.,*

16

*id.* And irrespective of the Court's approval of Initial Interim Order's challenge period (Initial Interim Order ¶ 18), the Court has repeatedly emphasized its willingness to revisit the challenge period and is "inclined to permit the challenge period to go however long it needs to go." Dec. 21 Hr'g Tr. 22:4–11.

Although Mr. Chancellor accurately identifies the good-faith findings and some payment of DIP Lender fees, these individual terms should not be singled out for modification, especially given the exigent circumstances in which the Debtors found themselves when seeking financing. *In re Clinton Street Food Corp.*, 170 B.R. 216 (Bankr. S.D.N.Y. 1994) (noting that even where the moving party is not seeking to disturb the validity of the postpetition financing, it is not appropriate to amend bargained-for terms). On that basis alone, this Court can set aside Mr. Chancellor's request to strike.

Mr. Chancellor's requests have been mostly resolved by the very order he seeks to vacate, and the remaining terms are noncontroversial and should not be the basis for modifying the order. Accordingly, Mr. Chancellor's Motion must be denied.

### C. The Initial Interim Order Has Not Expired.

The Initial Interim Order provides that it "shall expire at the conclusion of the second interim hearing." Initial Interim Order at 46, ¶ 29. It was contemplated that a further interim order would be entered to grant additional interim relief prior to the final hearing. However, because of the existence and continuance of events of default under the DIP Facility, the DIP Lenders terminated the DIP Facility and did not proceed with the second interim hearing. Accordingly, no second interim hearing ever occurred with respect to the DIP Facility, and, therefore, the Initial Interim Order has not expired.

In fact, the Initial Interim Order expressly provides that "[u]ntil such time as an amended interim order or Final Order shall have been entered, the DIP Facility Term Sheet and this Initial

Interim Order shall govern the financial and credit accommodations to be provided to the Debtors by the DIP Secured Parties . . . ." Initial Interim Order at 43, ¶ 24.  Mr. Chancellor's Motion must be denied to the extent it seeks to modify the Initial Interim Order on this basis.

**WHEREFORE**, the DIP Lenders respectfully request that this Court deny Mr. Chancellor's Motion and grant such further relief as is necessary and just.

Dated: January 5, 2021

/s/David A. Felice

David A. Felice (I.D. No. 4090)
BAILEY & GLASSER LLP
2916 Centerville Road, Suite 302
Wilmington, DE  19808
Fax: (302) 504-6334
E-mail: dfelice@baileyglasser.com

Brian A. Glasser (admitted *pro hac vice*)
Kevin W. Barrett (admitted *pro hac vice*)
Maggie B. Burrus (admitted *pro hac vice*)
BAILEY & GLASSER LLP
209 Capitol Street
Charleston, WV 25301
Telephone: (304) 345-6555
Fax: (304) 342-1110
Email: bglasser@baileyglasser.com
        kbarrett@baileyglasser.com
        mburrus@baileyglasser.com

Kathrine A. McLendon (admitted *pro hac vice*)
Dov Gottlieb (admitted *pro hac vice*)
Simpson Thatcher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017
Telephone: (212) 455-2000
Fax: (212) 455-2502
Email: kmclendon@stblaw.com
        dov.gottlieb@stblaw.com

*Attorneys for Riverstone Credit Management LLC,*
*as DIP Agent and Agent, and the DIP Lenders and*
*the Term Loan Lenders*