# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: WHITE STALLION ENERGY, LLC, et al., | )<br>)<br>) Chapter 7 |
| Debtors. | )<br>) Case No. 20-13037 (TMH)<br>) |
| | ) (Jointly Administered) |
| ALFRED T. GIULIANO, | )<br>) |
| Chapter 7 Trustee of White Stallion Energy, LLC, et al., | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Adv. Pro. No. _____ |
| RESPONSIBLE ENERGY OPERATIONS LLC, RIVERSTONE CREDIT PARTNERS, L.P., SUMMIT PARTNERS CREDIT FUND II, L.P., SUMMIT PARTNERS CREDIT FUND A-2, L.P., SUMMIT PARTNERS CREDIT FUND B-2, L.P., SUMMIT PARTNERS CREDIT OFFSHORE INTERMEDIATE FUND, II, L.P., SUMMIT INVESTORS CREDIT II, LLC and SUMMIT INVESTORS CREDIT (UK), L.P., | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

## COMPLAINT

Plaintiff Alfred T. Giuliano, the Chapter 7 Trustee (the "Trustee") of the

jointly administered estates of White Stallion Energy, LLC, *et al*. (the "Debtors"),

by and through his undersigned attorneys, brings this action against Responsible Energy Operations, LLC ("REO"), Riverstone Credit Partners, L.P., Summit Partners Credit Fund II, L.P., Summit Partners Credit Fund A-2, L.P., Summit Partners Credit Fund B-2, L.P., Summit Partners Credit Offshore Intermediate Fund, II, L.P., Summit Investors Credit II, LLC and Summit Investors Credit (UK), L.P. (the "Obligor Lenders," and together with REO, "Defendants").

## NATURE OF THE ADVERSARY PROCEEDING

1.      The Trustee brings this adversary proceeding to recover money owed in connection with a Court-approved Settlement Agreement that REO and the Obligor Lenders entered with the Debtors in 2021 and another Court-approved Settlement Agreement that REO entered with the Debtors in 2023.

## JURISDICTION AND VENUE

2.      The Court has jurisdiction over this matter pursuant to sections 1334 and 157 of title 28 of the United States Code, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012 (the "Standing Order"). Jurisdiction to grant declaratory relief exists pursuant to sections 2201 and 2202 of title 28 of the United States Code, section 105 of title 11 of the United States Code (the "Bankruptcy Code"), and Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") 7001(2) and 7001(9).

11194334.v4

3.      This is a core proceeding pursuant to section 157(b)(2) of title 28 of the United States Code, and the Court may enter a final order consistent with Article III of the United States Constitution.

4.      Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

## PARTIES

5.      The Plaintiff is the Trustee of the Debtors' Chapter 7 cases.  On September 11, 2024, the Debtors filed a *Motion for Entry of an Order (I) Converting their Chapter 11 Cases to Cases Under Chapter 7, (II) Establishing a Deadline for Filing Final Chapter 11 Fee Applications, and (III) Granting Related Relief* [Docket No. 2284].

6.      On September 27, 2024, the Court entered the *Order (I) Converting Chapter 11 Cases to Cases Under Chapter 7, (II) Establishing A Deadline for Filing Final Chapter 11 Fee Applications, And (III) Granting Related Relief* [Docket No. 2292].

7.      On September 27, 2024, the United States Trustee appointed Alfred T. Giuliano to serve as interim Trustee / Trustee of the estate of the Debtors. [Docket No. 2295].

8.      Defendant REO is a Delaware limited liability company, formed on or about September 9, 2021.  REO's principal place of business is, on information and belief, in Petersburg, Indiana, 47567.

11194334.v4

9.      The Obligor Lenders control REO and undertook contractual obligations in a 2021 Court-Approved Settlement Agreement with Debtors, discussed further below.

## FACTUAL BACKGROUND

10.     On December 2, 2020 (the "Petition Date"), all but one of the Debtors voluntarily petitioned for relief under Chapter 11 of the U.S. Bankruptcy Code. The remaining Debtor filed its Chapter 11 petition on January 26, 2021.  The Debtors' business operations included operating coal mining facilities in Indiana and Illinois and selling coal from those facilities.  At the outset of the Chapter 11 proceedings, the Debtors announced their intention to seek Court approval of a sale of substantially all their assets, having deemed that path to be the best option for preserving and maximizing value for the benefit of all stakeholders.

11.     On October 8, 2021, the Debtors held an auction to sell their assets. They received several bids to purchase mine-related real property, coal reserves, and related assets.  They accepted a bid from REO and thereafter entered an asset purchase agreement with REO.

12.     On October 29, 2021, the Court entered the *Order (I) Authorizing (A) Sale of Assets Free and Clear of All Liens, Claims, Encumbrances and Interests and (B) The Debtors Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (II) Granting Related Relief* [Docket No. 880] (the "Sale

4

Order"). Among other things, the Sale Order approved the Asset Purchase Agreement, dated as of October 25, 2021, (the "APA"), between the Debtors and REO. The APA closed on November 10, 2021, [Docket No. 921], and REO acquired the acquired the assets set forth in the APA.

**The 2021 Settlement Agreement with REO and the Obligor Lenders**

13. In connection with the closing on the APA, the Debtors and REO and the Obligor Lenders, who controlled REO, entered into a Settlement Agreement, effective as of October 20, 2021 (the "2021 Settlement Agreement"). A true and correct copy of the 2021 Settlement Agreement is attached as Exhibit 1. The parties to the 2021 Settlement Agreement expressly conditioned its effectiveness on this Court's approval of the APA and entry of the Sale Order, both of which occurred. [Doc. No. 1022-1, at pp. 3-4].

14. On December 13, 2021, the Court entered the *Order Authorizing and Approving Settlement Agreement Among the Debtors, the Committee, and the Lenders* [Docket No. 1022] (the "2021 Settlement Approval Order") approving the 2021 Settlement Agreement.

15. Under the 2021 Settlement Agreement, the Obligor Lenders agreed to cause REO to pay the Debtors a royalty (the "Overriding Royalty"):

> **Overriding Royalty**. If the Lenders or an affiliate of the Lenders purchase the Debtors' mining-related assets through the Sale, as consideration for the Settlement, *the Lenders agree to cause the Buyer [here, REO] to pay to the Debtors' estates a transferable*

5

_royalty of a standard commercial nature_, including but not limited to containing a covenant running with the land,

(a) $0.50 per ton of coal mined from the Debtors' coal reserves acquired by the Buyer through the Sale, plus

(b) The full amount of the FOB coal sale price per ton of coal in excess of $50 per ton up to a maximum additional amount of $2.00 per ton of coal mined from the Debtors' coal reserves acquired by the Buyer through the Sale and sold, up to an aggregate amount equal to $5,000,000 (the "Overriding Royalty") after payment of which all such royalty obligations shall automatically cease; and provided, however, that the proceeds of the Overriding Royalty, whether in the hands of the Debtors' estates or the Litigation Trust, may not be used to fund or pursue any challenges or claims against the Lenders, the Buyer, or any of their affiliates.

Such royalty will be payable monthly for all such coal mined and sold from the Debtors' coal reserves acquired by the Buyer through the Sale during the preceding calendar month commencing immediately upon the closing of the Sale.

[Docket No. 1022-1, at pp. 7-8] (emphasis added).

### **Events Leading to the 2023 Settlement Agreement with REO**

16.     For the months of November 2021 through April 2022, REO made Overriding Royalty payments to the Debtors.

17.     From May 2022 to August 2022, however, REO failed to make any monthly Overriding Royalty payments to the Debtors. Around the same time, REO had paid certain real property taxes for which it sought reimbursement from the Debtors under the APA.

18.    The Debtors and REO agreed to offset REO's outstanding Overriding Royalty payment obligations for May through August 2022 against amounts paid by REO for the real property taxes associated with property it acquired under the APA.

19.    In addition, REO identified certain property owned by the Debtors in Pike County, Indiana (the "Hoffman Farm") that was not included among the assets acquired under the APA, but that REO expressed a desire to acquire.

20.    To resolve their dispute regarding tax payments and certain of the outstanding Overriding Royalty payments owed, and to facilitate a conveyance of the Hoffman Farm, the Debtors and REO entered a Settlement Agreement, effective as of April 3, 2023 (the "2023 Settlement Agreement").

**The 2023 Settlement Agreement Between REO and the Debtors**

21.    On July 5, 2023, this Court entered the *Order Pursuant to Bankruptcy Code Sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rule 9019 Approving Settlement Agreement With Responsible Energy Operations LLC and Granting Related* [Docket No. 1884] approving the 2023 Settlement Agreement. A true and correct copy of the 2023 Settlement Agreement is attached as Exhibit 2.

22.    The 2023 Settlement Agreement is a binding contract between the Debtors and REO.

23.    There are no unsatisfied conditions precedent to REO's payment obligations under the 2023 Settlement Agreement.

11194334.v4

24.    In the 2023 Settlement Agreement, REO expressly acknowledged that, "pursuant to the 2021 Settlement Agreement, the Buyer [REO] is obligated to pay the Overriding Royalty to Debtors' estates in regular monthly payments based upon the amount of coal mined and sold from the mining properties acquired by the Buyer from the Debtors under the Purchase Agreement." [Docket No. 1884-1, at p. 3].

### Provisions Regarding Fixed Monthly Royalty Payments

25.    Under the 2023 Settlement Agreement, however, the Debtors and REO agreed to change the Overriding Royalty payment obligation from (a) a monthly payment amount tied to the amount of coal mined and sold by REO to (b) a fixed monthly payment of $200,000.00 per month (without regard to the amount of coal mined and sold) until the full balance owed was fulfilled.  As to the balance owed, they further agreed that REO's total outstanding Overriding Royalty payment obligation remaining was $3,055,014.46.

26.    The 2023 Settlement Agreement states, in relevant part:

Beginning with the September 2022 Overriding Royalty payment, the Overriding Royalty payment will be payable as a fixed monthly payment of $200,000 per month (the "Fixed Monthly Royalty Payment") instead of being calculated based on the amount of coal mined and sold from the Debtors' coal reserves acquired by the Buyer as set forth in the 2021 Settlement Agreement.
. . . .

The total amount owed under the Overriding Royalty after payment of the February 2023 Fixed Monthly Royalty Payment is $3,055,014.46, which will be satisfied through the Fixed Monthly Royalty Payments, beginning with the payment of $200,000 for March 2023 and ending

with a final payment of $55,014.46 due in June 2024; provided, however, that the outstanding balance remains subject to the 20% early payment discount available to the Buyer through December 13, 2023.

The Fixed Monthly Royalty Payment from the Buyer to the Debtors' estates may be suspended for a maximum of 90 days if one or more buyers representing 50% or more of the Buyer's coal sales declares force majeure or breach their obligations under its coal sales agreement(s) with the Buyer; provided, however, that if the Buyer suspends the Fixed Monthly Royalty Payment pursuant to this provision, the Buyer will provide to the Debtors' estates, as soon as practicable, a copy of the force majeure notice sent by the Buyer's customer(s) or notice of the default delivered to the Buyer's customer(s), as applicable. Any suspension of the Fixed Monthly Royalty Payments pursuant to the for[e]going will result in the extension of the Fixed Monthly Royalty Payments beyond June 2024 until the total of $3,055,014.46 set forth above is fully satisfied.

[Docket No. 1884-1 at pp. 4-5].

## **Late Charge Provision**

27.    The 2023 Settlement Agreement also includes a "late charge" provision

applicable to delinquent monthly Overriding Royalty payments:

If the Fixed Monthly Royalty Payment is not paid within 30 days following the date upon which it is due each month (as set forth above in the section entitled "Change to Fixed Monthly Royalty Payment"), the delinquent payment will start incurring late charges at an annualized rate of 8.0% compounding monthly starting as of the original due date.

## **Provision Regarding Purchase of Hoffman Farm**

28.    In addition, the 2023 Settlement Agreement required REO to purchase

the Hoffman Farm for $360,000.00:

9

The Buyer will purchase the Hoffman Farms Mitigation Property for $360,000 (the "Hoffman Sale"), pursuant to the terms of that certain Purchase and Sale Agreement between Debtor Solar Sources Mining, LLC and the Buyer, the substantially final form of which is attached to the Order as Exhibit 2 (the "Hoffman Purchase Agreement"). Pursuant to the Hoffman Purchase Agreement, the Buyer will issue 12 monthly payments of $30,000. The first such monthly payment shall be due upon the closing of the Hoffman Sale and each subsequent monthly payment shall be due on the first day of each month following the closing. In addition, the Buyer will pay the approximately $2,700 in delinquent property taxes owed for the Hoffman Farms Mitigation Property, which is included as part of the Estimated Real Property Taxes.

[Docket No. 1884-1 at pp. 5-6].

29.    Closing on the Debtors' sale of the Hoffman Farm to REO occurred on July 5, 2023.

30.    One of the Debtors, Solar Sources Mining, LLC ("Solar"), loaned REO funds needed to close on the Hoffman Sale.

31.    In connection with Solar's loan to REO, REO executed a promissory note (the "Promissory Note") in favor of Solar, secured by a mortgage on the Hoffman Farm.  A true and correct copy of the Promissory Note is attached as part of Exhibit 2.

32.    Under the Promissory Note, REO promised to repay Solar the purchase price balance ($330,000.00) in eleven equal monthly payments of $30,000.

33.    REO has failed to make $300,000 in required payments, which constitutes a default under the Promissory Note.

34.     The Trustee, on behalf of Solar, has provided REO written notice of its failure to make the required payments under the Promissory Note.  REO's failure has continued for more than fifteen days after the written notice.

### REO's Breaches of the 2023 Settlement Agreement

35.     REO breached the 2023 Settlement Agreement by failing to make any Overriding Royalty payments since July 2023 and by failing to pay $300,000.00 that remains due and outstanding for its purchase of the Hoffman Farm.

36.     REO's breach of its Overriding Royalty payment obligations has harmed the Debtors' estates.   Approximately $2.355 million remains unpaid, due, and outstanding under the 2023 Settlement Agreement.  This balance consists of eleven overdue monthly payments of $200,000 each, and one overdue payment of $155,000.

37.     REO did not provide any force majeure notice to the Debtors, as was required by the 2023 Settlement Agreement provision quoted above in paragraph 26 of this Complaint to temporarily suspend REO's payment obligation for a maximum of 90 days.

38.     REO did not provide any notice to the Debtors of any default notice delivered to REO's customers, as was required by the 2023 Settlement Agreement provision quoted above in paragraph 26 of this Complaint to temporarily suspend REO's payment obligation for a maximum of 90 days.

11194334.v4

39.     In addition, REO has failed to pay $300,000.00 that remains due and outstanding for its purchase of the Hoffman Farm.

40.     The Debtors have incurred damages in the amount of $2.655 million as a result of REO's breaches, plus the unpaid contractual late charges currently in excess of $195,000.00, for a total of at least $2,850,000.00.

## LEGAL CLAIMS

### COUNT I

**(Breach of the 2023 Settlement Agreement by REO)**

41.     The foregoing paragraphs are incorporated by reference as if fully set forth herein.

42.     The 2023 Settlement Agreement is a binding contract imposing payment obligations on REO.

43.     REO breached the 2023 Settlement Agreement by failing to make payments due under it.

44.     The Debtors' estates have been damaged as a result of REO's breach in the amount of approximately $2.355 million that remains unpaid, due, and outstanding as Overriding Royalty Payments due under the 2023 Settlement Agreement.

45.     REO has also failed to pay $300,000.00 that remains due and outstanding for its purchase of the Hoffman Farm.

11194334.v4

46.     The Debtors have incurred damages in the amount of approximately $2.655 million as a result of REO's breaches, plus the unpaid contractual late charges currently in excess of $195,000.00, for a total of at least $2,850,000.00.

## COUNT II

### (Breach of Promissory Note Against REO)

47.     The foregoing paragraphs are incorporated by reference as if fully set forth herein.

48.     In connection with Solar's loan to REO, REO executed the Promissory Note in favor of Solar, secured by a mortgage on the Hoffman Farm.

49.     Under the Promissory Note, REO promised to repay Solar $330,000.00 in eleven equal monthly payments of $30,000.

50.     The Promissory Note obligated REO to pay the Promissory Note in full by June 3, 2024.

51.     REO agreed in Section 6 of the Promissory Note that all payments due under the Promissory Note shall be paid when due, without deduction or setoff of any kind.

52.     REO breached the promissory note by failing to make $300,000 in required payments.

53.     The Trustee, on behalf of Solar, has provided REO written notice of its failure to make the required payments under the Note.  REO's failure has continued for more than fifteen days after the written notice.

54.     The Debtors' estates have incurred damages in the amount of approximately $300,000.00 as a result of REO's breach.

55.     The Promissory Note (¶ 10) expressly obligates REO to pay for all costs, expenses and reasonable attorneys' fees incurred to enforce the Promissory Note as a result of REO's default.

## COUNT III
### (Breach of the Hoffman Purchase Agreement by REO)

56.     The foregoing paragraphs are incorporated by reference as if fully set forth herein.

57.     The Hoffman Purchase Agreement is a binding contract imposing payment obligations on REO.

58.     REO breached the Hoffman Purchase Agreement by failing to make payments due under it.

59.     REO has also failed to pay $300,000.00 that remains due and outstanding for its purchase of the Hoffman Farm.

60.     The Trustee is entitled to recover attorneys' fees for enforcing the Hoffman Purchase Agreement, as set forth in Section 14(k) of that Agreement.

14

## COUNT IV

### (Breach of the 2021 Settlement Agreement by the Obligor Lenders)

61.    The foregoing paragraphs are incorporated by reference as if fully set forth herein.

62.    The 2021 Settlement Agreement is a binding contract imposing obligations on the Obligor Lenders.

63.    Under the 2021 Settlement Agreement, the Obligor Lenders agreed to cause REO to pay the Debtors the Overriding Royalty:

> **Overriding Royalty**. If the Lenders or an affiliate of the Lenders purchase the Debtors' mining-related assets through the Sale, as consideration for the Settlement, *the Lenders agree to cause the Buyer [here, REO] to pay to the Debtors' estates* a transferable royalty of a standard commercial nature, including but not limited to containing a covenant running with the land,
> (a) $0.50 per ton of coal mined from the Debtors' coal reserves acquired by the Buyer through the Sale, plus
> (b) The full amount of the FOB coal sale price per ton of coal in excess of $50 per ton up to a maximum additional amount of $2.00 per ton of coal mined from the Debtors' coal reserves acquired by the Buyer through the Sale and sold, up to an aggregate amount equal to $5,000,000 (the "Overriding Royalty") after payment of which all such royalty obligations shall automatically cease . . . .

[Docket No. 1022-1, at pp. 7-8] (emphasis added).

64.    The 2023 Settlement Agreement changed the Overriding Royalty payment obligation from (a) a monthly payment amount tied to the amount of coal

mined and sold to (b) a fixed monthly payment of $200,000.00 per month until the outstanding balance was paid off.

65.    The 2023 Settlement Agreement, however, preserved the Obligor Lenders' independent contractual obligation under the 2021 Settlement Agreement to cause REO to pay the Overriding Royalty payment obligation.  Specifically, the 2023 Settlement Agreement states, except "as expressly provided herein, nothing in this Settlement alters or amends the provisions of the 2021 Settlement Agreement." The 2023 Settlement Agreement did not express any intention to eliminate the Obligor Lenders' independent contractual undertaking to cause REO to pay the Overriding Royalty Payment.  Therefore, the Obligor Lenders' obligation under the 2021 Settlement Agreement remained after, and in addition to, REO's payment obligations under the 2023 Settlement Agreement.

66.    The Obligor Lenders have breached the 2021 Settlement Agreement by failing to cause REO to make the Overriding Royalty Payment.

67.    The Debtors' estates have been damaged as a result of the Obligor Lenders' breach in the amount of approximately $2.355 million that remains due and outstanding, plus the unpaid late charges currently in excess of $195,000.00, for a total of at least $2,550,000.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests judgment and relief against Defendants as follows:

a.  An Order declaring that REO has breached the 2023 Settlement Agreement, the Promissory Note, and the Hoffman Purchase Agreement.

b.  An Order declaring that the Obligor Lenders have breached the 2021 Settlement Agreement.

c.  Awarding compensatory damages against Defendants and in favor of the Trustee.

d.  Awarding the Trustee pre-judgment interest.

e.  Awarding the Trustee post-judgment interest.

f.  Awarding the Trustee its reasonable attorneys' fees and costs; and

g.  Granting the Trustee such other and further relief as the Court deems just and proper.

11194334.v4

Dated: February 7, 2025    **KLEHR HARRISON**
**HARVEY BRANZBURG LLP**

*/s/ Alyssa M. Radovanovich*
Domenic E. Pacitti (DE Bar No. 3989)
Thomas V. Ayala (DE Bar No. 6629)
Alyssa M. Radovanovich (DE Bar No. 7101)
919 Market Street, Suite 1000
Wilmington, Delaware 19801
Telephone: (302) 426-1189
Facsimile: (302) 426-9193
Email:  dpacitti@klehr.com
        tayala@klehr.com
        aradovanovich@klehr.com

– and –

Morton R. Branzburg (admitted *pro hac vice*)
KLEHR HARRISON HARVEY
BRANZBURG LLP
1835 Market Street, Suite 1400
Philadelphia, Pennsylvania 19103
Telephone:  (215) 569-2700
Facsimile: (215) 568-6603
Email:  mbranzburg@klehr.com

*Attorneys for Plaintiff Alfred T. Giuliano, Chapter 7*
*Trustee of White Stallion Energy, LLC, et al.*

18

11194334.v4