# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| WHITE STALLION ENERGY, LLC, *et al.*,[1] | Case No. 20-13037 (TMH) |
| Debtors. | (Jointly Administered) |
| ALFRED T. GIULIANO, Chapter 7 Trustee of White Stallion Energy, LLC, *et al.*, | |
| Plaintiff, | |
| v. | Adv. Pro. No. 25-50077-TMH |
| RESPONSIBLE ENERGY OPERATIONS LLC, RIVERSTONE CREDIT PARTNERS, L.P., SUMMIT PARTNERS CREDIT FUND II, L.P., SUMMIT PARTNERS CREDIT FUND A-2, L.P., SUMMIT PARTNERS CREDIT FUND B-2, L.P., SUMMIT PARTNERS CREDIT OFFSHORE INTERMEDIATE FUND, II, L.P., SUMMIT INVESTORS CREDIT II, LLC and SUMMIT INVESTORS CREDIT (UK), L.P., | Hearing Date: January 28, 2026 @ 10:00 a.m.<br>Obj. Deadline: January 14, 2026 @ 4:00 p.m. |
| Defendants. | |

**MOTION OF THE CHAPTER 7 TRUSTEE FOR ENTRY OF AN ORDER (A) APPROVING SETTLEMENT AGREEMENT AND (B) GRANTING RELATED RELIEF**

---

[1] The Debtors in these Chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number, include: White Stallion Energy, LLC (2360); Alchemy Fuels, LLC (N/A); Carbo*Prill, LLC (8385); Chili Pepper Mines, LLC (2247); Eagle River Coal, LLC (6614); Friendsville Mine LLC (8489); Liberty Mine, LLC (3730); Red Brush West, LLC (3940); Solar Sources Mining, LLC (3628); Trust Resources, LLC (1983); Vigo Coal Land, LLC (9585); Vigo Coal Operating Co., LLC (7462); Vigo Coal Sales, LLC (1325); Vigo Cypress Mine LLC (9409); Vigo Equipment, LLC (5629); Vigo Sunna, LLC (7468); White Stallion – Eagle River, LLC (6743); White Stallion – Solar, LLC (9457); White Stallion Acquisition, LLC (2298); and White Stallion Holdings, LLC (3645). The location of the Debtors' headquarters is: 250 N. Cross Pointe Blvd., Evansville, Indiana 47715.

Alfred T. Giuliano, as the Chapter 7 Trustee (the "Trustee") for the estates (the "Estates") of the above-captioned debtors (the "Debtors") respectfully represents in support of this motion (the "Motion") as follows:

**Relief Requested**

1. By this Motion, the Trustee seeks entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"): (a) approving and authorizing the settlement agreement annexed as **Exhibit 1** to the Order (the "Settlement Agreement"), which effectuates settlement of an adversary proceeding brought by the Trustee styled, *Giuliano v. REO, et al.*, Adv. Proc. No. 25-50077 (TMH) (D. Del. 2025) (the "Adversary Proceeding") and a global resolution of any and all claims asserted therein between the Debtors' Estates and Responsible Energy Operations LLC ("REO"), and (b) granting related relief. The Trustee believes that the Settlement Agreement is in the best interests of the estates and creditors and should be approved.

**Jurisdiction**

2. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012 (the "Amended Standing Order").

3. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution. Pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the Trustee consents to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court,

absent consent of the parties, cannot enter final orders or judgments in connection therewith consistent with Article III of the United States Constitution.

4.     Venue of the Chapter 11 Cases and this Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

5.     The statutory bases for the relief requested herein are sections 105 and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), and Bankruptcy Rule 9019(a).

## Background

6.     On December 2, 2020 (the "Petition Date"), each of the Debtors except for Eagle River Coal, LLC ("Eagle River"), filed voluntary petitions in the United States Bankruptcy Court for the District of Delaware (the "Court") for relief under chapter 11 of the Bankruptcy Code. On January 26, 2021, Eagle River also filed with the Court a voluntary petition for relief (together with each of the other Debtors' voluntary petitions for relief, collectively, the "Bankruptcy Cases").

7.     On September 11, 2024, the Debtors requested entry of an order converting the Bankruptcy Cases to cases under Chapter 7 of the Bankruptcy Code and granting related relief [Docket No. 2284] (the "Conversion Motion").

8.     On September 27, 2024, the Court entered an order granting the Conversion Motion [Docket No. 2292]. On that same date, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Trustee as the interim trustee to the estates of the Debtors. The First Meeting of Creditors in the Chapter 7 cases was held on December 18, 2024. Thereafter, the Trustee became the permanent Trustee in these Chapter 7 cases.

9.     Since his appointment, the Trustee has been performing his duties under section 704(a) of Title 11 of the United States Code (the "Bankruptcy Code"), analyzing assets and

evaluating potential sources of recovery for the Estates, including amounts owed by REO pursuant to an asset purchase agreement with the Debtors.

11. On October 8, 2021, the Debtors held an auction to sell their assets, following which REO and the Debtors entered into an asset purchase agreement (the "APA"). The APA closed on November 10, 2021, and REO acquired the assets set forth in the APA.

11. October 20, 2021, REO, the Debtors, and others entered into a settlement agreement (the "2021 Settlement Agreement"), which the Court approved on December 13, 2021. The 2021 Settlement Agreement provided that REO was obligated to pay to the Debtors' Estates a transferable royalty of a standard commercial nature (the "Overriding Royalty"). The Overriding Royalty payments were not paid in full and consequently the Trustee sought to collect the remaining sums due.

12. On April 3, 2023, the Debtors and REO entered an additional Settlement Agreement (the "2023 Settlement Agreement") that, in relevant part, (a) modified the mechanics of the Overriding Royalty payment from a monthly obligation tied to the amount of REO's coal sales into a fixed monthly payment made without regard to the amount of coal sold; and (b) obligated REO to pay for the purchase of real property referred to in the 2023 Settlement Agreement as the Hoffman Farm.  The Court approved the 2023 Settlement Agreement on July 15, 2023.

13. REO failed to make the Overriding Royalty payments in full, leaving more than $2.3 million unpaid, and REO failed to make $300,000 in payments due in connection with the Hoffman Farm transaction.

14. As a result of REO's default under the 2023 Settlement Agreement, the Trustee initiated the Adversary Proceeding in order to, *inter alia*, collect more than $2.3 million in

Overriding Royalty payments and $300,000 in payments for the Hoffman Farm, all due from REO to the Estates under the 2021 and 2023 Settlement Agreements.

## The Settlement Agreement

15. The Settlement Agreement arises out of disputes under the APA and the 2021 and 2023 Settlement Agreements.

16. <u>First</u>, the Trustee asserts that the 2021 and 2023 Settlement Agreements are binding, Court-approved contracts.

17. Second, the Trustee asserts that Debtors' estates have been damaged as a result of REO's contractual breaches in the amount of approximately $2.355 million that remains due as Overriding Royalty Payments and $300,000.00 that remains due for REO's purchase of the Hoffman Farm. REO answered the Complaint and raised various affirmative defenses.

18. <u>Third</u>, the Trustee further contends that REO's Lenders (as defined in the Complaint) (a) undertook an obligation in the 2021 Settlement Agreement to cause REO to pay the Overriding Royalty to the Debtors' estates; and (b) breached that obligation by failing to cause REO to pay the Overriding Royalty in full. The Lenders dispute liability.

19. On June 17, 2025, the Trustee moved for judgment on the pleadings in his favor on all claims and served the defendants with written discovery and requests for admissions. REO and the Lenders opposed the Trustee's motion, and the Lenders cross-moved for judgment on the pleadings. REO and the Lenders also responded to the written discovery and requests for admissions.

20. Those cross-motions for judgment on the pleadings were fully briefed as of September 12, 2025.

21. In an effort to resolve all their disputed issues, the Debtors and REO have engaged in good-faith negotiations and determined to resolve the Adversary Proceeding, and any and all other claims asserted in the Adversary Proceeding, on the terms set forth in the Settlement Agreement. In those negotiations, the Trustee considered REO's representations as to its financial ability to satisfy any potential judgment against it following litigation, the claims and defenses asserted in the Adversary Proceeding, and the anticipated costs of litigation.

22. The Settlement Agreement generally provides as follows:

- REO shall pay to the Debtors' estates the sum of $1,875,000.00 (the "Settlement Principal") plus (a) interest accruing at 6% per annum ($307.40 *per diem*) running from July 1, 2025 until the Settlement Principal is paid in full; and (b) attorneys' fees of $50,000.00 (collectively, the "Settlement Payment");

- upon receipt of the Settlement Payment, the Trustee, on behalf of himself, the Debtors' Estates, and their successors and assigns, releases and forever discharges REO and its past and present affiliates, members, officers, directors, employees, and agents from any and all claims, demands, and causes of action of any kind, known or unknown, arising from or relating to the Adversary Proceeding or the facts alleged therein, except for (a) rights to enforce the Settlement; and

- Upon approval by the Court of the Settlement Agreement, REO releases and forever discharges the Trustee, the Debtors, and their respective successors, representatives, professionals, and agents from any and all claims, demands, and causes of action of any kind, known or unknown, arising from or relating to the Adversary Proceeding or the facts alleged therein, except for rights to enforce the Settlement.

- After the Trustee receives the Settlement Payment, the Trustee agrees to dismiss the Adversary Proceeding with prejudice.

23. The effectiveness of the Settlement Agreement is conditioned on approval by the Court. In light of the readily apparent benefits of the Settlement Payment providing additional funds to the Estates, eliminating the uncertainty and administrative expense of bringing and/or defending litigation, and collecting any judgment against REO, the Trustee seeks approval of the Settlement Agreement and authorization to proceed with and enter into the Settlement Agreement and implement its terms.

**Basis for Relief**

24.   Bankruptcy Rule 9019(a) provides, in relevant part:

> On motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States Trustee . . . as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

25.   "To minimize litigation and expedite the administration of a bankruptcy estate, '[c]ompromises are favored in bankruptcy.'" *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (quoting 9 *Collier on Bankruptcy* ¶ 9019.03[1] (15th ed. 1993)); *see also Will v. Northwestern Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006) ("[s]ettlements are favored [in bankruptcy]"); *In re Adelphia Commc'n Corp.*, 361 B.R. 337, 348 (Bankr. D. Del. 2007) (same). Pursuant to Bankruptcy Rule 9019(a), a bankruptcy court may, after appropriate notice and a hearing, approve a compromise or settlement so long as the proposed settlement is fair, reasonable, and in the best interest of the estate. *See In re Marvel Entm't Group, Inc.*, 222 B.R. 243, 249 (D. Del 1998) ("[T]he ultimate inquiry [is] whether 'the compromise is fair, reasonable, and in the interest of the estate.'" (citation omitted)); *In re Northwestern Corp.*, No. 03-12872, 2008 WL 2704341, at *6 (Bankr. D. Del. July 10, 2008) ("[T]he bankruptcy court must determine whether the compromise is fair, reasonable, and in the best interests of the estate.") (citation omitted); *In re Key3Media Group, Inc.*, 336 B.R. 87, 92 (Bankr D. Del. 2005) ("[T]he bankruptcy court has a duty to make an informed, independent judgment that the compromise is fair and equitable."). "Ultimately, the decision whether or not to approve a settlement agreement lies within the sound discretion of the Court." *In re Nortel Networks, Inc.*, 522 B.R. 491, 510 (Bankr. D. Del. 2014).

26. In *Martin*, the United States Court of Appeals for the Third Circuit set forth a four-factor balancing test under which bankruptcy courts are to analyze proposed settlements. The factors the Court must consider are: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Martin*, 91 F.3d at 393; *see also Key3Media*, 336 B.R. at 93 (when determining whether a compromise is in the best interests of the estate, courts must "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal").

27. Importantly, it is well established that a settlement proponent need not convince the Court that a settlement is the best possible compromise, but only that the settlement falls "within the reasonable range of litigation possibilities somewhere above the lowest point in the range of reasonableness." *In re Nutritional Sourcing Corp.*, 398 B.R. 816, 833 (Bankr. D. Del. 2008); *see also In re W.R. Grace & Co.*, 475 B.R. 34, 77–78 (Bankr. D. Del. 2012) ("In analyzing the compromise or settlement agreement under the *Martin* factors, courts should not have a 'mini-trial' on the merits, but rather should canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness."); *Nortel*, 522 B.R. at 510 (same).[2]

---

[2] Further, under section 105(a) of the Bankruptcy Code, the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." Authorizing the Debtors to proceed with the Settlement Agreement falls squarely within the spirit of Bankruptcy Rule 9019, if not the letter, as well as the Bankruptcy Code's predilection for compromise. Thus, to the extent necessary, section 105(a) relief is appropriate in this instance and would best harmonize the settlement processes contemplated by the Bankruptcy Code.

28. Further, the Court need not hold a full evidentiary hearing before a compromise can be approved, but rather the Court's obligation is "to canvass the issues and see whether the settlement 'falls below the lowest point in a range of reasonableness.'" *Collier on Bankruptcy* at ¶ 9019.2, 9019-4, *quoting In re Drexel Lambert Grp., Inc.*, 134 B.R. 493 (Bankr. S.D.N.Y. 1991). *See Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983), *cert. denied*, 464 U.S. 822 (1983).

29. The Trustee respectfully submits that the Settlement represents a fair and reasonable compromise that is in the best interest of the Estates. In the Trustee's reasoned business judgment, entry into the Settlement is well within the range of potential litigation outcomes, especially considering the expected difficulties in collecting any materially larger amounts from REO following a contested litigation and the expense that would be attendant thereto.

30. In sum, the Trustee has concluded that the benefits that will be realized under the Settlement Agreement substantially outweigh the costs, and that approval of the Settlement Agreement is reasonable, appropriate and in the best interests of the creditors in the Debtors' Estates. Accordingly, the Trustee respectfully requests that the Court approve the Settlement Agreement and authorize the Trustee to proceed with and enter into the Settlement Agreement as such action is a reasonable exercise of the Trustee's business judgment and is in the best interest of the Debtors' Estates.

## Notice

31. Substantially contemporaneously with the filing of this Motion, the Trustee is serving a copy of this Motion on: (a) Debtors' counsel; (b) the United States Trustee; (c) REO's counsel; and (d) all parties in interest having requested notice pursuant to Bankruptcy Rule 2002 (the "<u>Notice Parties</u>"). In light of the nature of the relief requested herein, the Trustee submits that such notice is sufficient and no other or further notice need be given.

**No Prior Request**

32. No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, for the reasons set forth herein, the Trustee respectfully requests entry of the Order approving the Motion and Settlement Agreement effective upon entry of such Order.

Dated: December 22, 2025  
Wilmington, Delaware

*/s/ Domenic E. Pacitti*
Domenic E. Pacitti (DE Bar No. 3989)
Thomas V. Ayala (DE Bar No. 6629)
Alyssa M. Radovanovich (DE Bar No. 7101)
KLEHR HARRISON HARVEY BRANZBURG LLP
919 N. Market Street, Suite 1000
Wilmington, Delaware 19801
Telephone: (302) 426-1189
Facsimile:  (302) 426-9193
Email:  dpacitti@klehr.com
              tayala@klehr.com
              aradovanovich@klehr.com

-and-

Morton R. Branzburg, Esq.
KLEHR HARRISON HARVEY BRANZBURG LLP
1835 Market Street, Suite 1400
Philadelphia, Pennsylvania 19103
Telephone:  (215) 569-2700
Facsimile:  (215) 568-6603
Email:  mbranzburg@klehr.com

*Attorneys for Plaintiff Alfred T. Giuliano, Chapter 7 Trustee of White Stallion Energy, LLC, et al.*